SAMUEL EMERY, Appellant, *v.* JOHNSTON L. DE PEYSTER, Respondent

*De* facto *corporation — what proof of its existence is insufficient to establish the liability of a director for its debts.*

In order to establish the existence of a *de facto* corporation it is necessary to show not only that there is a law under which the corporation might be organized and an attempt to organize it, but that corporate powers have been exercised, *i. e.,* that the corporation has exercised its particular franchise by doing business under it.

A certificate of incorporation which recited that the object of the corporation was "to do a general publishing and printing business," was filed in the Secretary of State's office December 21, 1899, but the incorporation was defective because no certificate was filed in the office of the clerk of the county of New York, which was the place at which the corporate business was to be conducted. December 22, 1899, the board of directors held a meeting at which the sole business transacted was the election of officers and the passage of the following resolution;

"Whereas it is necessary for the welfare of the company to acquire certain rights now owned by Raymond L. Donnell in order to enter into business, it is hereby Resolved, that the proper officers be and are hereby authorized and instructed to issue to said Raymond L. Donnell one thousand dollars in cash

and nineteen hundred shares of the capital stock of this company in full pay-
ment for his entire interest in the publication known as the 'Railway News.'"
No action was taken pursuant to the resolution prior to January 1, 1900, nor did
the corporation transact any other business prior to that time.

*Held,* that a *de facto* corporation did not exist prior to January 1, 1900, and that
a director of the corporation could not be held liable for a debt thereof because
of the failure to file an annual report in January, 1900.

APPEAL by the plaintiff, Samuel Emery, from a judgment of the
Supreme Court in favor of the defendant, entered in the office of
the clerk of the county of New York on the 1st day of March,
1902, upon the dismissal of the complaint after a trial before the
court and a jury at the New York Trial Term.

*Dean Emery,* for the appellant.

*William H. Wood,* for the respondent.

PATTERSON, J. :

The plaintiff sued to enforce against the defendant the statutory
liability of a director of a corporation for the non-filing of an annual
report in January, 1900. The allegation of the complaint is that the
defendant, from May to November of the year 1900, was a director
and president of the corporation, and that the plaintiff in July, 1900,
was employed by that corporation to render certain services to it,
and that he was wrongfully discharged and suffered damages by
reason of such discharge. The defendant admits that he was a
director and president of the corporation from May to November,
1900, and that no report was filed of the affairs of the company in
1900. The plaintiff did not charge specifically that the corporation
was in existence on the 1st of January, 1900, and upon the trial he
was allowed to amend his complaint by alleging incorporation prior
to January 1, 1900, and the defendant was allowed to amend his
answer by denying such incorporation prior to January 1, 1900.

It appeared in evidence that a certificate of incorporation was
filed with the Secretary of State of the State of New York on the
21st of December, 1899, but no certificate was filed in the office
of the county clerk of the county of New York, which was the
place at which the corporate business was to be carried on. The
incorporation, therefore, was incomplete. Thereupon the plaintiff
undertook to prove that a *de facto* corporation existed prior to Jan-

uary, 1900. He showed an attempt to incorporate under a general law by filing a certificate with the Secretary of State and then made the effort to prove acts of user, such as would establish the existence of a *de facto* corporation. The only evidence offered on that subject is contained in the minutes of a meeting of the board of directors of the corporation held December 22, 1899, the day after the certificate of incorporation was filed in the office of the Secretary of State. In those minutes it is stated that the incorporation papers as presented by the attorney for the company were accepted and filed in its office. Upon motion, duly seconded, the election of officers was proceeded with and a president, vice-president, secretary and treasurer were elected. Then the following resolution was passed : " Whereas it is necessary for the welfare of the company to acquire certain rights now owned by Raymond L. Donnell in order to enter into business, it is hereby, Resolved that the proper officers be and are hereby authorized and instructed to issue to said Raymond L. Donnell one thousand dollars in cash and nineteen hundred shares of the capital stock of this company in full payment for his entire interest in the publication known as the ' Railway News.' There being no further business, the meeting adjourned."

The purpose for which the corporation was to be formed was " to do a general publishing and printing business." There is no evidence of any business act done by the corporation prior to January 1, 1900, in furtherance of that purpose. All that was done at the meeting of the board of directors was preliminary to beginning business. An organization of the corporation was effected and the purpose to do business was indicated, but there is no proof to show that the thousand dollars was ever paid to Donnell or the shares of stock issued to him, or that any executed contract was made with him or any one else. Nor is there one word of proof of any business transaction being had by the corporation during the year 1899. There was merely preparation for business and nothing more. That it did not begin to do business until March, 1900, is affirmatively shown in the testimony of Brooks, the vice-president.

To make proof of the existence of a *de facto* corporation, it is necessary to show not only that there is a law under which the corporation might be organized and an attempt to organize it, but that corporate powers have been exercised. That is, that the corpora-

tion has exercised its particular franchise by doing business under it. In *Methodist Episcopal Union Church* v. *Pickett* (19 N. Y. 482) it is said that where there is a valid law under which a corporation may exist and the record shows a *bona fide* attempt to organize under it, very slight evidence of user beyond that is necessary, but none of the cases to which our attention has been called holds that the mere organization of the corporation by the election of officers and the passage of resolutions by directors relating to contracts purely executory in their nature, constitute acts of user of the franchise. That was held even of acts of a *de jure* corporation. In *Kirkland* v. *Kille* (99 N. Y. 390) the action was brought against defendants, trustees of the Globe Smelting Company, to recover a debt of the company on the ground that the defendants had failed to make and file an annual report for the year 1876, as required by the General Manufacturing Act (Laws of 1848, chap. 40, § 12, as amd. by Laws of 1875, chap. 510). There, the company was fully organized for the purpose " of carrying on a mining, smelting and metallurgical business, to accumulate, conduct and supply water for mining purposes." The whole capital stock was issued in payment of mining property, smelting works and real estate ; officers were elected and their salaries fixed and the directors resolved to issue bonds to be secured by mortgage on the entire property of the company. At another meeting of the directors, it was resolved that immediate action was required to protect the property of the company and pay expenses already contracted on that account. In commenting upon these facts, the court said : " Not only was there no evidence that any other than formal acts were performed by the company in furtherance of the objects of its organization, but it was proven without contradiction ' that it never got into business;' ' that it never conducted or carried on a mining, smelting or metallurgical business, or that of accumulating, storing or conducting a supply of water for mining purposes.' In short, ' that it never performed any part of the business for which it was incorporated.' The bonds were not negotiated, and even the preliminary work of examination of the property by the consulting engineer, and ' assessment work,' that is, work done on the claim to protect the title, ceased in the early part of 1875. ' It never dug out any ore with a view to smelting.' The last of any kind was in June, 1875. There

was at no time a superintendent.   Under these circumstances we think no report in 1876 was required from the company.   It never had the material capacity to do business.   Even its effort to acquire it ceased and its intention to do so was given up in 1875."

We are of the opinion in this case that there was no user prior to the 1st of January, 1900 ; that a *de facto* corporation did not exist prior to that date, and, hence, the provisions of the statute requiring the filing of an annual report, which provisions are highly penal in their nature, are not applicable in this case and that the complaint was properly dismissed.

The judgment appealed from should be affirmed, with costs.

VAN BRUNT, P. J., INGRAHAM, HATCH and LAUGHLIN, JJ., concurred.

Judgment affirmed, with costs.