NATHAN M. WILSON, as Trustee in Bankruptcy of the Estate of COATS MANUFACTURING COMPANY, Bankrupt, Plaintiff, v. EDWARD C. BROWN et al., Defendants.

(Supreme Court, Erie Special Term for Motions, May, 1919.)

General Corporation Law, § 221, applies only to dissolution before expiration of charter — directors personally liable upon failure to wind up affairs of corporation — when title to corporate property vests in directors as trustees — corporations de facto — bankruptcy — General Corporation Law, §§ 35, 37, 91-a.

Section 221 of the General Corporation Law, which provides for the continuance of a corporation, after dissolution, for the purpose of paying, satisfying and discharging its existing debts, obligations, etc., applies only to a dissolution before the expiration of the time of corporate existence limited in the certificate of incorporation.

Upon the termination of the existence of a corporation organized under the Business Corporations Law of 1892, which contains no provision for continued existence even for winding-up proceedings, the legal title to its property and property rights vests in its then directors under section 35 of the General Corporation Law, in trust for the creditors and stockholders, with full power to settle its affairs and it is the strict legal duty of said directors so to do.

Where after the date when by limitation of its charter the existence of a solvent corporation ceased, though, under section 37 of the General Corporation Law, it could have been continued, the capital stock was twice increased, a corporate mortgage executed, stockholders' meetings held and dividends declared and paid until the corporation was adjudged a voluntary bankrupt, the directors who, upon the expiration of the charter of the corporation, became trustees for the creditors

and stockholders and such as were elected directors between the date of the expiration of the corporate existence and the adjudication in bankruptcy are severally liable for their failure to wind up the affairs of the corporation and for their participation in the continuance of its business thereafter.

At its adjudication as a bankrupt, the corporation was still a *de facto* corporation and its trustee in bankruptcy, under section 91-a of the General Corporation Law, was entitled to maintain a single omnibus action in equity against all of said directors each of whom had been instrumental in carrying on the business of the corporation which culminated in its bankruptcy.

Several defendants demur to the complaint on the following grounds:

1. That this court has no jurisdiction of the subject of the action.

2. That plaintiff has no legal capacity to sue.

3. That there is a misjoinder of causes of action.

4. That the complaint does not state facts sufficient to constitute a cause of action.

Robert H. Jackson and Benjamin S. Dean, for plaintiff.

Louis L. Babcock and Frank P. Church, for defendants Edward C. Brown, George E. Brown, Stanley F. Booth and Patrick L. O'Connor.

William Duke, Jr., for defendant C. Martin Duke.

Harold S. Brown, for defendant James H. McEwen.

Fred Robbins, for defendants Hiram A. Coats, Charles B. Hyslip and Mark D. Hyslip.

SEARS, J. The Coats Manufacturing Company was a corporation organized under the Business Corporations Law of the state of New York, and its certificate

of incorporation provided that the term of its exist-
ence should be twenty years. The certificate of incor-
poration was filed in the proper offices in June, 1894,
and the period of the corporate existence expired in
June, 1914. At that time the Coats Manufacturing
Company was solvent, and its assets were sufficient to
liquidate its indebtedness,. and retire its outstanding
capital stock. In June, 1914, when the corporation
ceased to exist by limitation of its charter, the defend-
ants Charles B. Hyslip, Mark B. Hyslip, Hiram A.
Coats, Patrick L. O'Connor and Edward C. Brown
composed the board of directors. Notwithstanding
the expiration of the corporate existence, the business
of the Coats Manufacturing Company was thereafter
continued, stockholders' meetings were held, and the
defendants, other than those who were directors in
1914, as stated, were, between the date of the expira-
tion of the corporate existence and the adjudication
in bankruptcy hereafter mentioned, elected by the
stockholders to be directors of the Coats Manufactur-
ing Company, and acted in the management of the
affairs of the Coats Manufacturing Company, so that
after the expiration of the term of its corporate exist-
ence, provided for in the certificate of incorporation,
and until its adjudication in bankruptcy, the defend-
ants, as directors for all or part of said time, con-
tinued to conduct the business of the Coats Manu-
facturing Company as a corporation and in the cor-
porate name. Each of the defendants failed, omitted
and neglected to wind up such corporation, or take any
steps toward such purpose; each of them, during the
period of his service, participated in the continuance
of the business, but also failed and neglected to per-
form the duties imposed by law on directors; addi-
tional real estate was purchased; extensive borrowings
occurred; assets of the corporation were assigned and

pledged, and its real estate was mortgaged; dividends were illegally declared; assets of the corporation were unlawfully dissipated; great loss occurred in the continuance of the business, and insolvency resulted, and finally, on or about November 10, 1917, the defendants Mark B. Hyslip, Stanley F. Booth, George E. Brown, Edward C. Brown, Hiram A. Coats and James H. McEwen, being at such time the acting directors of such " defunct " corporation, at a meeting held on that day, and attended by all of said acting directors, except James H. McEwen, by resolution duly adopted in writing, admitted inability to pay its debts in full, and willingness to be adjudged a bankrupt, and directed voluntary proceedings in bankruptcy to be instituted. On November 15, 1917, the Coats Manufacturing Company, as a corporation, was duly adjudicated a bankrupt at a term of the United States District Court for the Western District of New York, and the plaintiff was thereafter appointed the trustee in bankruptcy of the estate of the Coats Manufacturing Company, and qualified, and is now acting as such. This action has been authorized by the referee in bankruptcy. The complaint also alleges sundry wrongful acts committed by one or more of the defendants, but none by all of them, in the control and management of the business of the Coats Manufacturing Company, after the expiration of its corporate existence.

All of the demurrers may be considered together, and discussed under two main headings:

*First.* The validity of the bankruptcy proceeding, and the authority of the plaintiff as a trustee in bankruptcy; and

*Second.* The question as to the misjoinder of the causes of action.

*First.* The contention of the defendants is that in

June, 1914, at the expiration of the period of the cor-
porate existence, all corporate power was terminated;
that after that date there was no artificial entity recog-
nizable as a corporation, capable of being adjudged a
bankrupt, and that the Bankruptcy Court was, there-
fore, entirely without jurisdiction, and the plaintiff is
a complete stranger to the transactions of the defend-
ants, as well as to any rights which the creditors of
the Coats Manufacturing Company business, or the
stockholders of the Coats Manufacturing Company,
may have against the defendants.

It is beyond question that it was the strict legal duty
of the directors, who were such in June, 1914, to have
then proceeded to wind up the affairs of the corpora-
tion. By the statute (Gen. Corp. Law, § 35), the then
directors became trustees of the creditors and stock-
holders of the Coats Manufacturing Company, and
had full power to settle its affairs, collect and pay out-
standing debts, and divide among persons entitled
thereto other property remaining after the payment
of debts and necessary expenses. The legal title to the
property and property rights of the Coats Manu-
facturing Company, which during the corporate exist-
ence had been vested in the corporation itself, upon
the termination of the period of its corporate exist-
ence, became vested in those who were directors, in
trust for the creditors and stockholders, and the stock-
holders thereafter were merely *costuis que trust*
entitled to share ratably in the property after the
payment of debts. *Central City Savings Bank* v.
*Walker,* 66 N. Y. 424. No provision of the statute
continued the corporate existence even for the wind-
ing-up proceedings. Section 221 of the General Cor-
poration Law, which provides for the continuation of
the existence of a corporation after dissolution, for the
purpose of paying, satisfying and discharging its

existing debts, obligations, etc., applies only to a dissolution before the expiration of the term of corporate existence limited in the certificate of incorporation. The directors, who became trustees under the statute in June, 1914, failed to act in accordance with the provisions of the statute above referred to, and the other defendants participated in the violation of the statutory obligations, and all of the defendants transacted business in all respects as though the Coats Manufacturing Company was still a corporation. The defendants contend that, under these circumstances, at the time of the institution of the bankruptcy proceedings, the Coats Manufacturing Company was not only not a corporation *de jure,* but was not even a corporation *de facto,* and that the adjudication in bankruptcy is nugatory and subject to collateral attack. Several cases are cited by the plaintiff of adjudications in bankruptcy of corporations after judicial or statutory dissolution. *Matter of Munger Vehicle Tire Co.,* 159 Fed. Repr. 901; *Matter of Moench & Sons Co.,* 123 id. 965, and *White Mountain Paper Co.* v. *Morse & Co.,* 127 id. 643, are cases where there was a statute applicable, continuing the corporation for winding-up purposes, and none of these cases is, therefore, strictly analogous. *Matter of Cordova Shop,* 216 Fed. Repr. 818, is the case of the adjudication of an irregularly organized corporation, a well-recognized type of *de facto* corporation. *Matter of Adams & Hoyt Co.,* 164 Fed. Repr. 489, is a case where dissolution by judicial decree was obtained by the corporation, in order to forestall bankruptcy proceedings, and the court held that it was ineffective for such purpose.

While these particular authorities are not, in my opinion, a sufficient basis for holding the Coats Manufacturing Company a *de facto* corporation at the time

of the bankruptcy adjudication, the question remains as to whether the facts alleged in the complaint are sufficient to establish such *de facto* corporate existence. The necessary elements are thus stated in *Methodist Episcopal Union Church* v. *Pickett,* 19 N. Y. 482: " Two things are necessary to be shown in order to establish the existence of a corporation *de facto,* viz.: 1. The existence of a charter, or some law under which a corporation with the powers assumed might lawfully be created; and, 2. A user by the party to the suit, of the rights claimed to be conferred by such charter or law. (*United States Bank* v. *Stearns,* 15 Wend. 314)."

In *Von Lengerke* v. *City of New York,* 150 App. Div. 98, the court said: " In order to establish the existence of a *de facto* corporation it is necessary to show not only that there is a law under which the corporation might be organized, and an attempt to organize it, but that corporate powers have been thereafter exercised. (*Methodist Episcopal Union Church* v. *Pickett,* 19 N. Y. 482; *Emery* v. *DePeyster,* 77 App. Div. 65; *Van Buren* v. *Reformed Church of Gansevoort,* 62 Barb. 495)."

It is, doubtless, true that the dissolution of a corporation by the expiration of its corporate terms can be set up as a defense in an action brought by or against the corporation upon an obligation created during such term. *Sturges* v. *Vanderbilt,* 73 N. Y. 384. To this there is no theoretical or practical objection. But the present case presents an entirely different problem. The Business Corporations Law, under which this company was organized (Laws of 1892, chap. 691) provided that the certificate of incorporation should state the duration of the corporation, not to exceed fifty years. No public policy of the state was, therefore, infringed by the continuance of the

user of corporate form up to the time of the bankruptcy. At the time of the expiration of the corporate existence, a statute was in force under which the corporate existence could have been continued. Gen. Corp. Law, § 37. Although the certificate required thereunder was not filed, yet other papers were filed in the same offices where such certificate would have been filed if the legal steps for an extension of the corporate existence had been followed, for the capital stock of the Coats Manufacturing Company was twice increased after June, 1914. A corporate mortgage was executed. Stockholders' meetings were held and dividends were declared and paid, and finally a voluntary petition in bankruptcy was filed, and an adjudication followed.

If the analogy of physical death is sought to be applied to the expiration of the term of corporate existence of an organization which the law recognizes as a person, it is easy to answer that there is no greater difficulty in considering the organization as existing after its death than before its birth. And yet it is never necessary that the initial steps should be taken in absolute accord with the statute to hold the organization *de facto* existent. Such analogies are often misleading. Physical life with birth and death is an evidence of immutable natural law. Corporate life rests upon legislative fiat, and there is no reason to apply such a doubtful analogy to such a case as this, where the same kind of acts, in so far as the corporate character of the same is concerned, were done by men similarly authorized by their associates after, as before, the limit of the term of the corporation's existence.

In *Miller* v. *Coal Co.*, 31 W. Va. 836, where, after the termination of the period of the defendant's corporate existence, the directors, instead of winding up

the business, continued it, and in the course of such continued operation the plaintiff's intestate was killed by negligence for which the defendant, if it existed as a person recognized by the law, was responsible, the Supreme Court of Appeals of West Virginia held the defendant to be a *de facto* corporation and responsible as such. The court there said: " The principle, it seems to me, to be deduced from our statute and these authorities is, that a private business corporation acting and carrying on its corporate business in its corporate name, after its legal existence has ended by the expiration of its charter, must be held to be a corporation *de faoto;* and that as such, so long as it in fact so carries on its business and contracts or incurs liabilities with or to third persons dealing with it as such *de facto* corporation, it may sue and be sued at law either in actions *ex contractu* or *ex delicto,* and it cannot defeat such action by alleging that its charter had expired, before the cause of action arose. Its directors and stockholders by failing to wind up its business, when the charter expires, as it is their duty to do under our statute, cannot relieve the corporation from liability for acts done in its name and during its actual existence as a *de facto* corporation. In order to relieve it from liability the corporation must have ceased to exist both in law and in fact. And consequently, when it is sued as a corporation, a plea averring simply that it has ceased to exist in law or as a legal corporation will be insufficient, but it must aver also, that it had ceased to exist in fact, at the time the alleged cause of action arose." . . .

For these reasons, I am of the opinion that the Coats Manufacturing Company, when adjudicated a bankrupt, was a *de facto* corporation, and that the plaintiff, as its trustee in bankruptcy, has capacity to maintain this action especially against the defendants, each

one of whom has acted as though a director, and has been instrumental in carrying on the organization's business career which finally culminated in the voluntary bankruptcy proceeding.

*Second.* The other question raised is whether different causes of action are improperly united in the complaint. Whether the action is deemed one against trustees (Gen. Corp. Law, § 35), and those to whom property has been transferred, or is deemed one against directors under section 91-a of the General Corporation Law, the action is, in all events, one in equity for an accounting as to the business transaction of those occupying positions of trust. The nature of the action in either case is the same. If the defendants, who were directors at the time of the expiration of the corporate existence, are deemed to be sued as trustees owing a duty to the creditors and stockholders under section 35 of the General Corporation Law, the other defendants are added as trustees *ex maleficio,* or as transferees of the trust estate to account for property over which they exercised dominion. In this view of the case, all of the defendants united in an unlawful common purpose, to wit: the carrying on of the business of the Coats Manufacturing Company when the statutes expressly provided that the business should be wound up. Such an action is single, and what is said in *Mabon* v. *Miller,* 81 App. Div. 10, of an equity action by a stockholder against the directors of a corporation is applicable: " It is no objection to the complaint that the defendants may not be all equally culpable or equally liable to respond in damages or otherwise to account for the property which has been misappropriated. The principle upon which such an action is based rests in the fact that the defendants occupy a fiduciary relation, and in the discharge of their duties represent the corporation. Their dealings

in such relation have reference to the property and management of the same intrusted to their care. There may be many breaches, but they are of a single duty. There may be different trustees, but they deal with the same matter. There may be different degrees of participation in the disposition of the property, but the dealings are had with the property of the corporation, and the duty in such dealing is owed by the trustee to it; consequently, the act which furnishes the ground of action is the breach of duty, and an accounting is asked of the property affected by such breach, together with the damages which flow therefrom. The whole cause of action is, therefore, single, and the fact that all of the directors may not have acted at a given time or have been guilty of the same waste or involved in the same measure of damage inflicted upon the corporation is of no consequence. To the extent that they have been guilty of wrongful acts whereby property has been dissipated, for such acts and property they may be called upon to account, and variance in degree of acts, or culpability, or property wasted, or damage sustained, does not make different causes of action. Equity lays hold of the entire transaction and is invested with power in a single equitable action to submit each and every action of the directors to scrutiny, and award such judgment as is consonant with the facts and will remedy the wrong, and may determine therein the liability of each director for his culpable act. *(Bosworth* v. *Allen,* 168 N. Y. 157; *People* v. *Tweed,* 63 N. Y. 194; *Porter* v. *International Bridge Co.,* 163 id. 79.)''

This action, in my opinion, however, is rather to be considered one against the directors of a corporation (*de facto* to be sure, but none the less a corporation).

If this view is correct, section 91-a of the General Corporation Law is applicable, and the action is a

single omnibus equity action against directors. In *German American Coffee Co.* v. *Diehl,* 86 Misc. Rep. 547; affd., 168 App. Div. 913, on opinion below, Mr. Justice Page, speaking of such an action, says:

" It is then claimed in support of the second ground of demurrer, namely, for misjoinder of causes of action, that if the action be not one against the directors for an accounting in the strict sense, that each separate wrongful act constitutes a separate tort for which a separate action must be brought and no relief in any way partaking of the nature of an accounting in equity can be joined with any of the tort actions. This was clearly the law of this state prior to the enactment of the statute under which this action is brought. Gen. Corp. Law, § 91-a; Laws of 1913, chap. 633. An action for damages for the misfeasance or nonfeasance of a director or officer of a corporation was an action at law subject to the rules and restrictions governing such actions, and could not be joined with an action for equitable relief (*Higgins* v. *Tefft,* 4 App. Div. 62; *O'Brien* v. *Fitzgerald,* 143 N. Y. 377; *Mutual Life Ins. Co.* v. *Gillette,* 119 App. Div. 430; *People* v. *Equitable Life Assur. Soc.,* 124 id. 714; *Moran* v. *Vreeland,* 81 Misc. Rep. 664). But by section 91-a, *supra,* a jurisdiction to entertain such an action in equity on behalf of the corporation or its representatives has been expressly conferred upon this court, with a provision for the separate trial by jury, pursuant to section 970 of the Code of Civil Procedure, of any issue of negligence which may arise in such an action, if either party should apply for it. The effect of this statute is to do away with the distinctions recognized in the cases above cited between strict actions for an accounting of property actually received and for wrongful acts, and to authorize a single comprehensive action in equity in

which the directors or officers of a corporation may be called to account for all of their acts while in office, whether the said acts consisted of the actual misappropriation of funds or were negligence or neglect of duty, resulting in damage.''

I am, therefore, of the opinion that the complaint states but one cause of action.

All of the demurrers are overruled with motion costs against each defendant demurring separately, with leave to each defendant demurring, on payment of said costs, to withdraw the demurrer and answer within twenty days from the date of the service of a copy of the order or judgment overruling the demurrers.

Ordered accordingly.