NATHAN GARZO et al., Appellants, *v.* MAID OF THE MIST STEAMBOAT COMPANY et al., Respondents, et al., Defendants.

Argued January 7, 1952; decided March 13, 1952.

*Adrian Block* and *John L. Beyer, Jr.,* for appellants. I. Section 49 of the General Corporation Law speaks prospectively as of the effective date of the enactment, April 6, 1944, and is applicable only to corporations the charters of which expire after the effective date of such section. (*People* v. *Wendel,* 217

N. Y. 260; *Hub Commercial Co.* v. *Rosenblum*, 21 N. Y. S. 2d 426; *Addiss* v. *Selig*, 264 N. Y. 274; *Lewittes & Sons* v. *Perlow*, 254 App. Div. 94; *Jacobus* v. *Colgate*, 217 N. Y. 235; *Germania Sav. Bank* v. *Village of Suspension Bridge*, 159 N. Y. 362; *Roberts* v. *Roberts-Wicks Co.*, 184 N. Y. 257; *Davison* v. *Parke, Austin & Lipscomb, Inc.*, 285 N. Y. 500.) II. A construction of section 49 of the General Corporation Law to the effect that the revival of the charter of corporate defendant is thereby authorized renders that section invalid as to plaintiffs. Even if not so invalid, plaintiffs are entitled to an appraisal of their stock and payment to them of the appraised value. (*Rossi* v. *Claire*, 186 Cal. 544; *Stott* v. *Stott Realty Co.*, 288 Mich. 35; *Continental Co.* v. *United States*, 259 U. S. 156; *Williams* v. *Renshaw*, 220 App. Div. 39; *People* v. *New York Bldg. Loan Banking Co.*, 50 Misc. 23; *Michael* v. *Cayey-Caguas Tobacco Co.*, 190 App. Div. 618; *Coolidge* v. *Long*, 282 U. S. 582; *Nichols* v. *Coolidge*, 274 U. S. 531; *Matter of Mohr*, 175 Misc. 706; *Douglas* v. *Perlstein*, 170 Misc. 561; *Brennan* v. *Barnes*, 133 Misc. 340; *Welt* v. *Beachcomber, Inc.*, 166 Misc. 29.) III. The conduct of plaintiffs is not a bar to the relief demanded. (*Ansorge* v. *Belfer*, 248 N. Y. 145; *Draper* v. *Oswego Co. Fire Relief Assn.*, 190 N. Y. 12; *White* v. *La Due & Fitch, Inc.*, 277 App. Div. 1092; *Moore* v. *United States Cremation Co.*, 158 Misc. 621; *Feldman* v. *Metropolitan Life Ins. Co.*, 259 App. Div. 123; *Wynn* v. *Wynn*, 189 Misc. 96.)

*Paul P. Cohen, William G. Shoemaker, Jr., Robert O. Swados* and *Preston L. Wright, Jr.*, for respondents. I. Section 49 of the General Corporation Law applies to corporations whose stated term expired before the enactment of the section. (*Matter of Fleetwood Acres, Inc.*, v. *National Life Ins. Co.*, 186 Misc. 299, 270 App. Div. 1050; *Matter of Andersen*, 178 N. Y. 416; *People ex rel. Huntington* v. *Crennan*, 141 N. Y. 239; *People ex rel. Collins* v. *Spicer*, 99 N. Y. 225; *People ex rel. Central Trust Co.* v. *Prendergast*, 202 N. Y. 188; *Beeler & Campbell Supply Co.* v. *Warren*, 151 Kan. 755; *Wilner Friends Credit Assn.* v. *Scheffres*, 175 Misc. 909.) II. The revival of defendant corporation pursuant to section 49 did not infringe the rights of plaintiffs under the Federal or State Constitution. (*Lord* v. *Equitable Life Assur. Soc.*, 194 N. Y. 212; *Davison* v. *Parke,*

*Austin & Lipscomb, Inc.,* 285 N. Y. 500; *McNulty* v. *W. & J. Sloane,* 184 Misc. 835; *Matter of Mohr,* 175 Misc. 706; *Brennan* v. *Barnes,* 133 Misc. 340; *Wilson* v. *Brown,* 107 Misc. 167, 190 App. Div. 926; *Anderson* v. *International Minerals & Chemical Corp.,* 295 N. Y. 343; *Matter of Mt. Sinai Hosp.,* 250 N. Y. 103.) III. The refusal to grant a court-mandated appraisal of, and payment for, plaintiffs' stock did not constitute an abuse of the equitable discretion vested in the courts below. (*Nann* v. *Raimist,* 255 N. Y. 307; *Treadwell* v. *Clark,* 190 N. Y. 51; *Matter of Bronson,* 177 App. Div. 374, *Albrecht, Maguire & Co.* v. *General Plastics, Inc.,* 256 App. Div. 134; *Matter of Silberkraus,* 250 N. Y. 242; *Langan* v. *Francklyn,* 29 Abb. N. C. 102; *Metropolitan Tel. & Tel. Co.* v. *Metropolitan Tel. & Tel. Co.,* 156 App. Div. 577; *Precision Co.* v. *Automotive Co.,* 324 U. S. 806.) IV. Plaintiffs are not entitled to the relief prayed for in the amended complaint. (*Brennan* v. *Barnes,* 133 Misc. 340; *Metropolitan Tel. & Tel. Co.* v. *Metropolitan Tel. & Tel. Co.,* 156 App. Div. 577; *Bloedorn* v. *Washington Times Co.,* 89 F. 2d 835; *Wilmington Trust Co.* v. *Wilmington Soc. of Fine Arts,* 34 A. 2d 308 [Del.].)

FULD, J. This is an appeal by plaintiffs as of right, on constitutional grounds, from the Appellate Division's unanimous affirmance of the judgment dismissing their complaint. Plaintiffs, minority stockholders of defendant corporation, which by its charter terms expired in 1942, object to its attempted revival in 1947 pursuant to the provisions of section 49 of the General Corporation Law, enacted in 1944. Contending that the application of that section to defendant effects an unconstitutional deprivation of their rights as stockholders, plaintiffs seek a dissolution of the corporation and payment to them of their prorata share of its assets.

Defendant Maid of the Mist Steamboat Corporation is primarily engaged in the operation of sightseeing and pleasure steamboats on the Niagara River, just below Niagara Falls. It was organized in 1892 under the Transportation Corporations Law (L. 1890, ch. 566) for a term of fifty years, the maximum then allowed by statute. It was not until 1947 that anyone connected with the corporation became aware of the fact that it had " expired " in 1942. The failure to take action, pursuant to

section 45 of the General Corporation Law, to extend the corporation's life before that time was, it is clear, the result solely of inadvertence. The business and activities of the corporation were carried on after 1942 just as they had been before. Meetings of directors and stockholders were held, a lease from a Canadian Parks Commission was renewed, dividends were declared annually and franchise and other taxes paid.

After the fact of expiration was brought to its attention in 1947, the board of directors — over plaintiffs' objection but with the approval of holders of approximately three fourths of the shares of the stock of the corporation — immediately proceeded to revive the corporation's existence and render its duration perpetual by filing a certificate of revival pursuant to section 49 of the General Corporation Law. Subdivision 1 of that section reads in part as follows: " Any domestic corporation the term of duration of which has expired under the terms of its certificate of incorporation or last certificate of extension of corporate existence, may, at any time after such expiration, revive its corporate existence and extend it for an additional term or for perpetual duration by filing a certificate which shall be entitled and endorsed ' Certificate of revival of existence of .......... ' ". Subdivision 3 provides that the revival must be approved, in the case of a stock corporation, by the holders of a majority of the shares of each class of stock.

Section 49 was enacted to fill a gap in the legislative scheme regarding corporations. Although New York was the first state to adopt a general law for the incorporation of business corporations (L. 1811, ch. 67), it shared, throughout the nineteenth century, the almost universal sentiment that the term of existence of corporate business should not be unlimited. (See *Liggett Co.* v. *Lee,* 288 U. S. 517, 554 *et seq.,* per BRANDEIS, J.; see, also, Ballantine on Corporations [Rev. ed., 1946], § 9, pp. 37–40.) The maximum term for which they could endure was, as in this case, fifty years. Relaxation of this policy limiting corporate existence to a single specified term had already taken place when defendant was organized in 1892. In 1890 (General Corporation Law of 1890, ch. 563, § 22), any corporation, two thirds of its stockholders consenting, was privileged to extend its term for a further period " not exceeding the term for which it was incorporated in the first instance ", by filing a certificate

of extension at any time within three years prior to its expiration (cf. General Corporation Law, present § 45). The next step was taken in 1895; by chapter 671 of the laws of that year, ordinary business corporations could be formed with unlimited duration (Business Corporations Law, § 2). Corporations already organized could not take advantage of the new provision (see *People ex rel. Haberman* v. *James,* 5 App. Div. 412, 421–422), but that limitation was removed in 1901 (L. 1901, ch. 355, amdg. General Corporation Law, § 32). And, finally, the same privileges were extended in 1915 to corporations organized under the Transportation Corporations Law (§ 10, as amd. by L. 1915, ch. 677).

These provisions did not eliminate entirely problems stemming from the expiration of charters. Officers and directors of corporations formed when perpetual duration was not available were sometimes unaware, sometimes forgetful, of the limitation, only to discover later that the terms for which the companies had been organized had expired. The sole remedy was an appeal to the legislature for a private act to revive the corporation, and, indeed, a sizeable number of such acts were passed at each session. The pattern was the same in other states, with the consequence that a movement gradually developed for the enactment of general legislation to eliminate the need for private bills. In 1943, the Law Revision Commission of this state, noting that such statutes had been adopted in other jurisdictions, recommended amendment of the General Corporation Law to permit a corporation to file a certificate of revival even after its corporate existence had expired (Report of N. Y. Law Revision Commission, N. Y. Legis. Doc. [1943], No. 65, pp. 365–408). Although the measure originally proposed did not become law, a revised bill, the present section 49, was enacted the following year (L. 1944, ch. 591).

Both its language and its legislative history establish that section 49 applies to corporations which had expired prior to its passage. The wording of its first subdivision — " Any domestic corporation the term of duration of which *has expired* " may " revive its corporate existence " — calls for such an interpretation (cf. *State ex rel. Nagle* v. *Leader Co.,* 97 Mont. 586), and the clear import of subdivision 11 virtually compels it. Enumerating the types of corporations excluded from the

statute's coverage, that subdivision lists corporations " whose stockholders have passed a resolution for dissolution or liquidation * * * [or] whose assets have been distributed * * * in whole or in part * * * in furtherance of an intention * * * to terminate the corporation's existence or to liquidate its affairs ", but not those whose terms had already run out. Read in its entirety, there can be no doubt that the statute reflects a legislative intent to include corporations already expired, provided the failure to file a certificate of extension before expiration was unintentional — and the Law Revision Commission's Report, to which we have already referred, confirms that conclusion (*op. cit.*, pp. 356, 368, 388–389).

In reaching this result, we have not failed to consider the principle that the law favors a prospective interpretation of a statute wherever possible. While it " takes a clear expression of the legislative purpose to justify a retroactive application " (*Jacobus* v. *Colgate*, 217 N. Y. 235, 240; see, also, *Shielcrawt* v. *Moffett*, 294 N. Y. 180, 188–189), that purpose is here unmistakably indicated. (See, e.g., *Matter of Andersen*, 178 N. Y. 416, 420; see, also, *People ex rel. Huntington* v. *Crennan*, 141 N. Y. 239; McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 51.)

Since section 49, as we read it, authorized the continued existence of defendant corporation, we turn to plaintiffs' claim that the legislature exceeded its power in passing it. Plaintiffs contend that, upon the charter's expiration, they possessed a " vested " right, immune from legislative interference, to have the corporation dissolved and its assets distributed. The claim that " vested " rights have been interfered with is a familiar one in connection with the alteration of corporate charters, and has proved of little, if any, aid in determining either legislative power or legislative intent. (Cf., e.g., *Davison* v. *Parke, Austin & Lipscomb, Inc.*, 285 N. Y. 500, 509.) Whether the legislature in a particular situation acted beyond its power can only be determined from the nature of the alleged rights and the character of the change the legislature authorized.

Defendant Maid of the Mist, by virtue of section 45 of the General Corporation Law, could undoubtedly have extended its charter just prior to its expiration. That section provides that " Any domestic corporation at any time before the expiration

thereof, may extend the term of its existence beyond the time specified * * * by filing a certificate * * * ' of exten. sion of existence' ''. Since the prototype of section 45 (General Corporation Law of 1890, ch. 563) was in existence when defendant corporation was organized in 1892, it is hornbook law that that provision became part of the corporate charter, permitting the corporation through a two-thirds vote of its stockholders to extend its existence beyond its specified term, and, accordingly, plaintiffs would have been bound by such an extension. (Cf. *Union Hotel Co.* v. *Hersee*, 79 N. Y. 454, 458; *Anderson* v. *International Minerals & Chemical Corp.*, 295 N. Y. 343, 351; *Beloff* v. *Consolidated Edison Co. of N. Y.*, 300 N. Y. 11, 19; Ballantine, *op. cit.*, § 273, p. 643; Notes; 105 A. L. R. 1453, 117 A. L. R. 1290.)

In the case before us, the corporation inadvertently neglected to provide for the extension of its charter during its fifty-year term. There was no thought in anyone's mind of permitting the company to expire or come to an end. Its business and its activities continued precisely as before, and — prior to the institution of this proceeding — plaintiffs continued, without protest, to enjoy their rights as stockholders in the going enterprise. Section 49 and the revival of the corporation under it only served therefore to remedy an oversight and to allow the regular continuance of the corporate enterprise in accordance with the intent and expectation of all those connected with it. A statute which thus " simply enlarges " the term of a corporation involves no " organic " change and violates no constitutional prohibition against the passage of retroactive laws. (See *Union Hotel Co.* v. *Hersee, supra,* 79 N. Y. 454, 458.)

The power reserved to the state to alter corporation laws and charters is specific and ample warrant for this legislation. (N. Y. Const., art. X, § 1; General Corporation Law, § 5; see, also, *Beloff* v. *Consolidated Edison Co. of N. Y., supra,* 300 N. Y. 11, 19; *Anderson* v. *International Minerals & Chemical Corp., supra,* 295 N. Y. 343; *Matter of Mt. Sinai Hosp.*, 250 N. Y. 103; *Lord* v. *Equitable Life Assur. Soc.*, 194 N. Y. 212; *McNulty* v. *W. & J. Sloane*, 184 Misc. 835.) The mere ending of the corporate term did not render such reserve power inoperative. Corporations whose charters may have expired

continue to have a *de jure* existence for the purpose of winding up their affairs, and, to that end, meetings may be held, corporate property conveyed, suits brought and defended, directors elected and debts paid (General Corporation Law, § 29). In addition, where, as here, a corporation carries on its affairs and exercises corporate powers as before, it is a *de facto* corporation as well, and ordinarily no one but the state may question its corporate existence. (See, e.g., *Coxe* v. *State of New York,* 144 N. Y. 396, 409; *Wilson* v. *Brown,* 107 Misc. 167, affd. 190 App. Div. 926; see, also, *Bushnell* v. *Consolidated Ice Mach. Co.,* 138 Ill. 67, 73–74; *Campbell* v. *Perth Amboy Mut. Loan Assn.,* 76 N. J. Eq. 347, 354; Ballantine, *op cit.,* § 34; 8 Fletcher's Cyclopedia Corporations [Rev. ed., 1931], § 3843, pp. 156–157.)

In point of fact, as already noted, section 49 is limited in its application to corporations which have neither determined to dissolve nor taken steps looking toward dissolution (subd. 11). The statute was not enacted to resuscitate a lifeless corpse or to operate in a vacuum; it was put into the law, and is here invoked, to deal with a truly functioning enterprise. As Judge SEARS, sitting at Special Term, sagely observed in *Wilson* v. *Brown (supra,* 107 Misc. 167, 174) : " If the analogy of physical death is sought to be applied to the expiration of the term of corporate existence of an organization which the law recognizes as a person, it is easy to answer that there is no greater difficulty in considering the organization as existing after its death than before its birth. * * * Such analogies are often misleading. Physical life with birth and death is an evidence of immutable natural law. Corporate life rests upon legislative fiat, and there is no reason to apply such a doubtful analogy to such a case as this, where the same kind of acts, in so far as the corporate character of the same is concerned, were done by men similarly authorized by their associates after, as before, the limit of the term of the corporation's existence."

The courts will not fail, then, to look beyond the letter of the corporate charter and apply the legislative mandate to the practical situation which it was designed to meet. Thus, in *Delaware & Hudson Co.* v. *Mechanicville & F. E. R. R. Co.* (268 N. Y. 394), this court was asked to rule that an action could not be brought to procure a judgment " dissolving " a corporation whose charter had already expired. In holding that such an action

would lie, the court declared: "We think that the Legislature so intended. We are not now concerned with legal dialectics but with practical administration of law" (p. 398). So, here, it was the legislative design that a corporation such as the one before us might be revived after expiry of the term specified in its charter. Under the state's broad reserve power, that design must be given effect. (See *Union Hotel Co.* v. *Hersee, supra,* 79 N. Y. 454, 458; see, also, *Stott* v. *Stott Realty Co.,* 288 Mich. 35, 42–43, 46; *Diamond State Iron Co.* v. *Husbands,* 8 Del. Ch. 205; *State ex rel. Nagle* v. *Leader Co., supra,* 97 Mont. 586; Ballantine, *op. cit.,* § 33.)

Section 49 does not afford minority stockholders who object to the revival of an expired corporation the right to have their stock appraised and receive its value. In approving the bill, Governor Dewey believed that they should be accorded that right and suggested legislation to provide for it (1944 Public Papers of Governor Dewey, p. 248), but his recommendation has not been followed. That omission does not, however, affect the validity of the statute.

The pattern of appraisal provisions is not uniform, and, in this state at least, the right to an appraisal has never been granted in any of the statutes providing for an extension of corporate existence (General Corporation Law, §§ 45, 46). While there are intimations here and there that an appraisal right is provided to eliminate all possible doubt about the constitutionality of a statute authorizing changes in existing corporations (see *Bingham* v. *Savings Investment & Trust Co.,* 101 N. J. Eq. 413, 419; cf. *Albrecht, Maguire & Co.* v. *General Plastics, Inc.,* 256 App. Div. 134, 137–138; *Nice Ball Bearing Co.* v. *Mortgage Bldg. & Loan Assn.,* 310 Pa. 560, 564), the view has been expressed that such a right may neither validate unauthorized action nor render constitutional acts which in its absence would be held to violate due process. (See Levy, Rights of Dissenting Shareholders, 15 Corn. L. Q. 420, 427.) We are not, however, called upon to determine that question since the "change" here effected is not so "organic" or fundamental as to give rise to any constitutional doubt. (See, e.g., *Union Hotel Co.* v. *Hersee, supra,* 79 N. Y. 454, 458.) In short, an appraisal is not provided for in section 49, and none is required to assure its validity.

Plaintiffs also urge that the corporation should be required, as a matter of equity, to pay them the cash equivalent of the shares which they hold. Whether such a right may exist apart from statute is not entirely free from doubt (compare Ballantine, *op. cit.*, § 290, pp. 683–684; § 298, p. 700, and Levy, *op. cit.*, 15 Corn. L. Q. 420, 425–426, with Law Revision Commission Report, *op. cit.*, p. 394), but, even assuming that it does exist and that a court of equity may in a proper case direct that dissenting stockholders be paid their interest in cash, it is clear that plaintiffs are not here entitled to such redress as a matter of law. The courts below have concluded that this is not a case for equitable relief, and, without detailing the circumstances that were weighed by them, it is sufficient to observe that we perceive no basis for disturbing their conclusion.

The judgment should be affirmed, with costs.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and FROESSEL, JJ., concur.

Judgment affirmed.