MOTHER BERTHA MUSIC,
INC., Plaintiff,

v.

TRIO MUSIC CO., INC., Defendant.

No. 88 Civ. 8577 (JMW).

United States District Court,
S.D. New York.

July 7, 1989.

Donald S. Zakarin and Tina C. Kremenez-ky, Pryor, Cashman, Sherman & Flynn, New York City, for plaintiff.

Leonard M. Marks and Jane G. Stevens, Gold, Farrell & Marks, New York City, for defendant.

## MEMORANDUM ORDER

WALKER, District Judge:

### I. Introduction

This dispute concerns control over the rights to twenty-five classic songs written in the 1960s, including such favorites as "Chapel of Love" and "Da Do Run Run." Plaintiff Mother Bertha Music, Inc., a recently formed California corporation owned by songwriter and producer Phil Spector ("Spector"), has brought suit against defendant Trio Music Co. ("Trio"), a New York-based music publishing concern owned by Jerry Leiber ("Leiber") and Mike Stoller ("Stoller"). Plaintiff claims that

Trio withheld royalty payments owed to Mother Bertha Music, Inc. under a 1972 co-publishing agreement between the two companies; plaintiff seeks a declaratory judgment terminating the 1972 Agreement as well as actual and punitive damages. Defendant has moved for dismissal under Fed.R.Civ.P. 12(b)(6) or 12(b)(1) on the grounds that plaintiff was not actually a party to the 1972 Agreement but was created solely to establish federal diversity jurisdiction; alternatively, defendant asks for summary judgment in its favor under Fed.R.Civ.P. 56. Both parties seek sanctions under Fed.R.Civ.P. 11. For the reasons discussed below, defendant's motions for dismissal and judgment on the pleadings are denied; both parties motions for sanctions under Rule 11 are also denied.

## II. Background

In contrast to the title of Spector's song "There's No Other (Like My Baby)," there has been more than one "Mother Bertha Music, Inc." over the past twenty-five years. The name "Mother Bertha Music, Inc." has been used in connection with two distinct corporations at different times; in addition, the name has been used loosely and sporadically by Spector in his business dealings. Understandably, this has spawned considerable confusion as to the identity and interests of the plaintiff Mother Bertha Music, Inc., as explained below.

In or about 1960, Stoller and Leiber formed Trio to engage in music publishing. Around the same time, they began to work with Spector, who was then beginning a career in song-writing and publishing. In 1963, Spector formed Mother Bertha Music, Inc. ("Mother Bertha (N.Y.)"), as a New York corporation. During the early 1960s, Spector and Mother Bertha (N.Y.) cooperated with Trio to produce a number of songs together; some of these songs, such as "Why Don't They Let Us Fall In Love" and "Da Do Run Run," have, to some extent, retained their popularity over the years and

continue to generate significant copyright royalties.

In December 1968, effective May 1969, Spector dissolved Mother Bertha (N.Y.) as a New York corporation. Under law, its assets became vested in its sole shareholder, Spector, a California citizen. Early in 1970, Spector conveyed his rights to these assets to a California Short–Term Trust ("1970 Trust"), established under the law of that state. See Gore Aff., Exh. A.[1] Until recently, Trio was not aware of the dissolution of Mother Bertha (N.Y.). D.Mem. at 9.

During the early 1970s, Spector, whether intentionally or inadvertently, continued to do business occasionally under the name of Mother Bertha Music, Inc.—a company which had been formally dissolved several years earlier. By 1972, a dispute had arisen between Spector's businesses and Trio concerning the interests of the two parties in twenty-five compositions co-written by Spector, Ellie Greenwich, and Jeff Barry. Stoller and Leiber continued to believe that they were dealing with Mother Bertha Music, Inc., the New York corporation. In December 1972, Trio, Spector, and an entity known as Mother Bertha Music, Inc.[2] entered into an agreement (the "1972 Agreement"). This agreement provided that the disputed copyrights would be registered in the joint names of Trio and Mother Bertha; that Trio would administer these copyrights; and that Trio would pay Mother Bertha certain royalties on the different songs. The 1972 Agreement referred in a number of places to "Spector and Mother Bertha Music, Inc.," and was signed by three different parties—Trio, Spector, and "Mother Bertha"; Spector signed on behalf of Mother Bertha as well as for himself. D.Exh., App. at 6. A year later, in November 1973, Spector and "Mother Bertha" entered with Trio into another agreement (the "1973 Agreement") which ratified and confirmed the 1972 Agreement. Again, Spector signed for

---

1. References throughout are as follows: Affidavit ("Aff."); Defendant's Memorandum in Support of Motion to Dismiss ("D.Mem."); Plaintiff's Memorandum in Opposition to Motion to Dismiss ("P.Mem."); Exhibit ("Exh."); Plaintiff's 3(g) Statement ("P. 3(g)"); Complaint ("Comp.").

2. The 1972 Agreement listed Mother Bertha's address as in care of its attorneys in New York.

both himself and Mother Bertha.[3] The arrangement established by the two agreements worked for over a decade. Around 1985, however, both parties began to suspect that the other was not accurately accounting for its share of the royalties.

Meanwhile, back in California, the 1970 Trust, limited by California law to ten years, expired in 1980. The rights were transferred to a successor short-term trust ("1980 Trust"). *See* Gore Aff., Exh. B. According to plaintiff, in mid–1988, Spector and his advisors began to explore "how Mr. Spector's business structure could be reorganized to more efficiently deal with his entertainment industry activities" especially in light of changes in the tax laws. Gore Aff., ¶ 9. The 1980 Trust would expire in 1990 and, under the 1986 Tax Code, could not be renewed. *Id.*

This reorganization of Spector's business structure led to the formation of Mother Bertha Music, Inc., a California corporation ("Mother Bertha (Cal.)") on November 30, 1988. On December 1, the 1980 Trust beneficiaries renounced their rights, and the Trust dissolved. These rights again vested in Spector. The next day, Spector assigned all his rights in musical compositions, including the twenty-five songs covered by the 1972 Agreement, to Mother Bertha (Cal.). That same day, December 2, 1988, Mother Bertha (Cal.) filed this suit against Trio.

In its complaint, Mother Bertha (Cal.) claims that Trio has withheld royalties owed to Mother Bertha (Cal.) under the 1972 Agreement as well as violated other provisions of that agreement. Mother Bertha (Cal.) asks for declaratory judgment terminating the Agreement—effectively giving Mother Bertha (Cal.) greater control over the rights to the twenty-five songs—along with actual damages of about $250,000 and punitive damages of two million dollars. Defendant now seeks dismissal under Fed.R.Civ.P. 12(b)(6) and 12(b)(1) or summary judgment under Fed.R.Civ.P. 56.

*III.  Discussion*

**A.  Defendant's Substantive Motions**

Defendant's motions under Fed.R.Civ.P. 12(b)(6) and 12(b)(1) essentially rest upon two related arguments: first, that Mother Bertha (Cal.) was created at the eleventh hour solely to create otherwise absent federal diversity jurisdiction; and, second, that Mother Bertha (Cal.) has no right to sue since it was not a party, third party beneficiary, or even successor-in-interest to a party to the 1972 Agreement.

*1.  Subject Matter Jurisdiction*

■ The creation of a diverse plaintiff shortly before a suit is filed may create a suspicion of collusiveness, in violation of 28 U.S.C. § 1359. This section provides:

A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to involve the jurisdiction of such court.

*See, e.g., Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 476 (2d Cir. 1976); and *Drexel Burnham Lambert Group Inc. v. Galadari*, 610 F.Supp 114, 117 (S.D.N.Y.1985).

■ As discussed further below, defendant argues that the song rights at issue in this suit continued to reside in a New York entity even after the 1969 dissolution. Therefore, defendant maintains that Mother Bertha (Cal.) was created in 1988 only to create a diverse plaintiff. In *Prudential Oil Corp v. Phillips Petroleum Co.*, the Second Circuit explained that:

we hold that where it is shown that a non-diverse parent corporation has assigned a claim to its wholly owned diverse subsidiary engaged in no business other than the prosecution of that claim, the assignment must be treated as presumptively improper and as having been undertaken for the purpose of attempting to manufacture diversity jurisdiction. Thereupon, the assignee-plaintiff may rebut or meet the presumption by offering

---

**3.** Again, the 1973 Agreement listed Mother Bertha's address as in care of its attorneys in New York.

evidence that the transfer was made for a legitimate business purpose unconnected with the creation of diversity jurisdiction. See Federal Rules of Evidence, § 301.

546 F.2d at 476 (footnote omitted). While *Prudential* dealt with an assignment, analogous reasoning can be applied to the incorporation of a diverse plaintiff.

Here, plaintiff has asserted some facially valid reasons for incorporating Mother Bertha (Cal.). Gore Aff. ¶¶ 9–12. According to Spector's accountant, Mother Bertha (Cal.) was established "as part of Mr. Spector's overall business reorganization and tax planning that had been under discussion for the previous six months." Gore Aff., ¶ 13. Upon review of the present record, the Court finds plaintiff's actions to be prompted by business reasons other than the creation of diversity jurisdiction.

Moreover, as discussed further below, the available evidence lends support to plaintiff's contention that "[a]ll of the rights at issue in this lawsuit have belonged to California persons and/or entities continuously since 1969." P. 3(g), ¶ 13. When Mother Bertha (N.Y.) was formally dissolved in 1969, its rights and assets passed by law to Spector, its sole shareholder and a citizen of California. These rights were subsequently assigned to the two California trusts and then to Mother Bertha (Cal.). Thus, diversity jurisdiction would presumably have been available had either the 1980 Trust—or, had that Trust been dissolved, Spector himself—brought suit against Trio. *See* Gore Aff. ¶ 14; and P. 3(g) ¶ 13.

During discovery, facts may come to light suggesting that Mother Bertha (Cal.) was created solely to fabricate diversity jurisdiction. If so, with or without motion by defendant, this Court would dismiss plaintiff's claim under 28 U.S.C. § 1359 for lack of subject matter jurisdiction. *See, e.g., Hughes v. Patrolmen's Benevolent Association of the City of New York, Inc.,* 850 F.2d 876, 881 (2d Cir.1988); Fed.R. Civ.P. 12(h)(3). And at that point, the Court would entertain appropriate motions for sanctions. As in all cases, this Court will not tolerate collusive behavior. At the present time, however, the Court cannot find that plaintiff's behavior comes within the scope of 28 U.S.C. § 1359.

### 2. *Fed.R.Civ.P. 12(b)(6)*

▮ Relatedly, defendant maintains that Mother Bertha (N.Y.) has continued as a *de facto* New York corporation since the 1969 dissolution and that it was this corporation which was a party to the 1972 and 1973 Agreements. Since Mother Bertha (N.Y.) has not assigned its rights to Mother Bertha (Cal.), defendant reasons, the California corporation is in no way a party to the 1972 Agreement and therefore cannot bring suit on it.

In support of this argument, defendant points to several factors. First and perhaps foremost, the signatory to the 1972 and 1973 agreements was "Mother Bertha Music, Inc.," with a New York address, even though Mother Bertha (N.Y.) had, unknown to Trio, been formally dissolved in 1969. Second, the corporate form of Mother Bertha continued to be used in other ways after 1969. For example, sheet music published during the 1970s and 1980s continued to bear the names of both Trio and "Mother Bertha Music, Inc.," even though the latter company presumably no longer existed. Second Stoller Aff., Exh. E.

Defendant claims that, "Both prior to and after executing the 1972 Agreement, MB New York [Mother Bertha (N.Y.)] continued to function and hold itself out to Trio and the world as being a New York corporation." D. Mem. at 12. Defendant points to *Garzo v. Maid of the Mist Steamboat Co.*, which held that where "a corporation carries on its affairs and exercises corporate powers as before, it is a *de facto* corporation ... and ordinarily no one but the state may question its corporate existence." 303 N.Y. 516, 524, 104 N.E.2d 882 (1952). *Garzo*, however, was quite different, for there "the corporation inadvertently neglected to provide for the extension of its charter during its fifty-year term. There was no thought in anyone's mind of permitting the company to expire or come

to an end." *Id.* at 523, 104 N.E.2d 882. Here, Spector intentionally dissolved the company, though he continued to use the corporate name occasionally.

The record in this case does indicate that Spector and his advisors were careless in their use of the name "Mother Bertha Music, Inc." Plaintiff admits that Spector's New York lawyers inadvertently used the Mother Bertha name in the 1972 Agreement. Plaintiff attempts to explain that in 1972,

> Spector and the "Phil Spector 1970 Short–Term Trust," improperly identified as Mother Bertha Music, Inc., entered into an agreement with Trio Music, Co., Inc. with respect to the exploitation of a specified group of 25 musical compositions.... The real party in interest to the 1972 Agreement was not the improperly identified defunct New York Corporation, Mother Bertha Music, Inc. but instead, was the Phil Spector 1970 Short–Term Trust.

P. 3(g), ¶¶ 4, 5. While this ignores the fact that Spector himself signed both the 1968 certificate of dissolution for Mother Bertha (N.Y.) and the 1972 and 1973 agreements on behalf of both himself and Mother Bertha Music, Inc., the appearance of Mother Bertha on the agreements is, in itself, hardly conclusive. Other factors which might indicate corporate existence—including, but not limited to, bank records, company minutes, letterhead—are all absent here. *Compare D & W Central Station Alarm Co., Inc. v. Copymasters, Inc.,* 122 Misc.2d 453, 471 N.Y.S.2d 464, 466 (Civ.Ct. Queens Co. 1983); *In re Gold Depository Unlimited of America,* 106 Misc.2d 992, 436 N.Y. S.2d 794 (Sup.Ct.N.Y.Co.1980).

Upon review of the present record, the Court finds that there is insufficient evidence to establish that Mother Bertha (N.Y.) continued to exist as a *de facto*

corporation after 1969.[4] Moreover, at no time has this corporate confusion operated to the disadvantage of Trio. The *de facto* corporation doctrine is a creation of equity aimed at preventing prejudice to a party's substantive rights. *See, e.g., A.A. Sutain, Ltd. v. Montgomery Ward & Company,* 22 A.D.2d 607, 257 N.Y.S.2d 724, 727, *aff'd* 17 N.Y.2d 776, 270 N.Y.S.2d 626, 217 N.E.2d 674 (1st Dept.1965); *Bowditch v. 57 Laight Street. Corp.,* 111 Misc.2d 255, 443 N.Y. S.2d 785, 788 (Sup. Ct. Special Term, N.Y. Co. 1981). Since Spector has apparently acted as if the 1970 and 1980 Trusts were parties to the 1972 Agreement, there is no need to invoke this equitable doctrine when defendant has not suffered by the appearance of a dissolved corporation as a signatory to the 1972 Agreement. *See Bowditch,* 443 N.Y.S.2d at 788.

The present facts, viewed in favor of the non-moving party, indicate that Mother Bertha (N.Y.) did not continue as a *de facto* corporation after 1969. Hence, the rights at issue passed to Spector at the 1969 dissolution, and the 1970 Trust (and its successors-in-interest) can be treated as the party to the 1972 Agreement. Mother Bertha (Cal.), then, may bring suit on that agreement. At this stage, plaintiff's suit should not be dismissed under Fed.R.Civ.P. 12(b)(6).[5]

### 3. Rule 11 Sanctions

Both parties have asked for their attorneys' fees as sanctions under Fed.R. Civ.P. 11. Rule 11, as amended, states:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existent law or a good faith argument

---

**4.** There is as yet no more extensive evidence of the continuing corporate existence of Mother Bertha (N.Y.) during the past twenty years than that mentioned in the text. *See* P. 3(g), ¶ 6. Defendant points to evidence such as recent royalty statements issued to "Phil Spector 1980 Short Term Trust," which also list "Mother Bertha Music." *See* Stoller Aff., Exh. F. Since these statements are addressed to the 1980 Trust

in Los Angeles, defendant's contention that they indicate the continuing existence of a New York corporation is unpersuasive.

**5.** Similarly, since material issues of fact exist as to the merits of plaintiff's claim, this Court cannot now grant summary judgment.

for extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause any unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11. "[W]here the scriptures of the rule have been transgressed, it is incumbent upon the district court to fashion proper sanctions." *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 n. 7 (2d Cir.1985), *modified on other grounds*, 821 F.2d 121 (2d Cir), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

Of course, Rule 11 is "not intend[ed] to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law," and a court should impose sanctions only when "it is patently clear that a claim has absolutely no chance of success under the existing precedents," or was interposed for an improper purpose. *Id.* at 254. *See also Oliveri v. Thompson*, 803 F.2d 1265, 1274 (2d Cir.1986); *Nakash v. U.S. Department of Justice*, 708 F.Supp. 1354, 1368 (S.D.N.Y.1988).

Under the standard set by *Eastway* and its progeny, the Court finds that sanctions are unwarranted at this point against either party in the present case. The organizational history of what is now Mother Bertha (Cal.) is more than a little confusing. Until recently, defendant apparently had no reason to believe Mother Bertha (N.Y.) no longer existed. Hence defendant's assertion that Mother Bertha (Cal.) was incorporated simply to create diversity cannot be dismissed as frivolous. Indeed, if additional evidence comes to light in support of their argument, defendants may file another motion to dismiss.

At the same time, plaintiff's pleadings do not merit sanctions. While plaintiff in its complaint misidentified itself as an immediate party to the 1972 Agreement, plaintiff does appear to be a successor-in-interest to parties which, for all intents and purposes, were bound by the 1972 Agreement. As

this Court is unconvinced that plaintiff brought this suit for an improper purpose or that defendant's motion to dismiss was unwarranted, sanctions are not appropriate.

## IV.  Conclusion

For the reasons set forth above, defendant's motion to dismiss is denied. Both parties' motions for sanctions under Rule 11 are denied.

SO ORDERED.