ANIMAZING ENTERTAINMENT, INC., Florio Entertainment, Inc., Florio Management, Inc., Frank Florio, Plaintiffs,

v.

LOUIS LOFREDO ASSOCIATES, INC., Louis Lofredo, Defendants.

Louis Lofredo Associates, Inc., Louis Lofredo, Counter-claimants,

v.

Durkin Hayes Publishing Ltd., Counterclaim-defendant.

No. 97 Civ. 6765(MGC).

United States District Court, S.D. New York.

March 17, 2000.

---

Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, NY, by Paul I. Perlman, for counterclaim-defendant.

Aieta & Greco, New York City, by Mario Aieta, for plaintiffs.

Law Office of Christopher Stanley, New York City, by Christopher L. Stanley, for defendants.

## OPINION

CEDARBAUM, District Judge.

This is a dispute over a sales representative agreement that plaintiffs and defendants each assert was breached by the other side. Plaintiffs seek various forms of equitable relief against defendants for claims based in contract as well as copyright and trademark. Defendants assert counterclaims against plaintiffs for damages and equitable relief based on the same contract relied on by plaintiffs. Defendants also assert a counterclaim against a third party, Durkin Hayes Publishing Ltd. ("Durkin Hayes"), for tortious interference with this contract.

Plaintiffs and Durkin Hayes argue that the principal of a defunct corporation cannot enforce a contract made in the name of the corporation. They have filed motions for summary judgment dismissing defendants' counterclaims on this ground. Plaintiffs have agreed to withdraw of all of their claims against defendants. Accordingly, the counterclaims are the only remaining claims in the case. For the reasons discussed below, the motions for summary judgment are granted. Defendants' counterclaims and the complaint are dismissed in their entirety.

## BACKGROUND

The facts relevant to this motion are not in dispute.

On November 22, 1996, Louis Lofredo Associates, Inc. ("LL Associates") entered into a "Sales Representative Agreement" ("Agreement") with Florio Entertainment, Inc. ("FEI") and Animazing, Inc. The Agreement was drafted and signed by Louis Lofredo on behalf of LL Associates as the company's president. The Agreement designated LL Associates as the "Exclusive International Sales Representative" of FEI and Animazing and provided that LL Associates would receive commissions for licensing FEI's and Animazing's products worldwide.

Less than a year after the Agreement was signed, plaintiffs FEI, Animazing, Florio Management, Inc. and Frank Florio filed this lawsuit against LL Associates and Lofredo for breach of contract, fraud in the inducement, copyright infringement and trademark infringement. Plaintiffs sought declaratory judgment and other equitable relief, but not damages. Defendants asserted counterclaims against plaintiffs for breach of the Agreement and torts bottomed on the existence of the Agreement. Defendants also asserted a counterclaim against third party Durkin Hayes for tortious interference with the Agreement. Defendants sought damages on all of their counterclaims.

At his deposition, Lofredo revealed that LL Associates was defunct when the Agreement was signed. Although LL Associates was incorporated in New York in 1967, it was dissolved by proclamation in 1977 and remained dissolved through the time of Lofredo's deposition. Lofredo also testified that he knew of these facts at the time he signed the Agreement in 1996. Although Lofredo used letterhead indicating that LL Associates was incorporated, he made no effort during the 1990s to reincorporate his business and filed no corporate tax returns.

Lofredo did not disclose any of this information to plaintiffs prior to the signing of the Agreement, or at any other time before his deposition. Nor did Lofredo disclose this information to Durkin Hayes prior to this litigation.

Durkin Hayes moves for summary judgment on defendants' claim against it for tortious interference with contract on the ground that Lofredo and LL Associates cannot prove an essential element of their claim, the existence of a contract. Plaintiffs move for summary judgment on defendants' counterclaims on the ground that no contract existed that could have been breached. Defendants argue that the Agreement is valid because LL Associates was a de facto corporation at the time the Agreement was signed, because LL Associates is a corporation by estoppel, and because Lofredo himself should be treated as a party to the Agreement. Defendants

also argue that plaintiffs and Durkin Hayes have waived this defense, which they describe as lack of capacity.

## DISCUSSION

### I. Waiver

Defendants argue as an initial matter that plaintiffs' and Durkin Hayes' contention that LL Associates did not exist at the time the Agreement was signed is an affirmative defense that has been waived because it was not pleaded in the answers to Lofredo's counterclaims. Fed.R.Civ.P. 8(c) requires that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively . . . any . . . matter constituting an avoidance or affirmative defense." "[A] party's failure to plead an affirmative defense bars its invocation at later stages of the litigation." *Doubleday & Co. v. Curtis*, 763 F.2d 495, 503 (2d Cir.1985). *See also Design Options, Inc. v. BellePointe, Inc.*, 940 F.Supp. 86, 92 (S.D.N.Y.1996).

■ Defendants contend that the present motions invoke the defense of lack of capacity to sue and that this defense has been waived because it was not raised in the answers to the counterclaims. Fed. R.Civ.P. 9(a) requires that capacity to sue or be sued be denied with specificity. The defense can be waived if not raised in the initial responsive pleading to a claim. *See Pressman v. Estate of Steinvorth*, 860 F.Supp. 171, 176 (S.D.N.Y.1994) ("Under [Rule 9(a)] if the defense [of lack of capacity] is not raised in a timely manner, i.e. at the outset of a lawsuit, it is waived.").

The flaw in defendants' argument is that it mischaracterizes plaintiffs' and Durkin Hayes' motion as resting on LL Associates' lack of capacity to sue, when the motion is more accurately described as based on LL Associates' lack of capacity to form contracts. The issue raised by these motions is whether defendants can establish an essential element of all of their counterclaims, namely, the existence of a valid contract. Since the present motions are based not on an affirmative defense but rather on the absence of an essential element of defendants' claims, the rules of waiver are inapplicable.

■ Even if these motions asserted an affirmative defense, waiver would be inappropriate. Waiver of an affirmative defense "may not be proper where the defense is raised at the first pragmatically possible time and applying it at that time would not unfairly prejudice the opposing party." *American Federal Group, Ltd. v. Rothenberg*, 136 F.3d 897, 910 (2d Cir. 1998). *See also Asbestos Workers Syracuse Pension Fund v. M.G. Industrial Insulation Co.*, 875 F.Supp. 132, 137–38 (N.D.N.Y.1995) (considering capacity defense despite its absence from defendant's answer because no prejudice would result). In this case, the fact that LL Associates was a defunct corporation was not discovered until Lofredo was deposed. The matter was brought to the court's attention shortly thereafter. In fact, Lofredo misled plaintiffs and Durkin Hayes when he admitted in his answer the allegation of the complaint that LL Associates is a New York corporation. LL Associates' lack of capacity to contract was thus raised at the first pragmatically possible time, and any prejudice claimed by Lofredo is solely attributable to his own misrepresentations in the contract and the pleadings. Accordingly, waiver, an equitable concept, would be inapplicable even if the present motions were construed as asserting a new defense.

### II. Validity of Contract

Plaintiffs and Durkin Hayes contend that defendants, counterclaims for breach of the Agreement and tortious interference with the Agreement should be dismissed because LL Associates did not exist at the time the Agreement was signed. They argue that the Agreement was void from its inception and is therefore unenforceable. Defendants make three arguments in response: first, that LL Associates was a de facto corporation; second, that plaintiffs and Durkin Hayes should be estopped from challenging the validity of LL Associ-

ates' corporate status; and third, that in any event Lofredo may assert the counterclaims on behalf of himself personally.

### A. De Facto Corporation

■ Defendants first argue that the Agreement is valid because LL Associates was a de facto corporation at the time the Agreement was signed. Under New York law,[1] a business may under certain circumstances be treated as a de facto corporation even if its legal charter has expired. *Garzo v. Maid of the Mist Co.*, 303 N.Y. 516, 524, 104 N.E.2d 882, 887 (1952). "A pivotal element of a de facto corporation is a colorable attempt to comply with the statutes governing incorporation." *Clinton Investors Co. v. Watkins*, 146 A.D.2d 861, 863, 536 N.Y.S.2d 270, 272 (3d Dep't 1989). In order for a business to be considered a de facto corporation, it must function as if it were a corporation and make substantial efforts to either incorporate or remedy any defects of incorporation upon their discovery.

In every decision treating a business as a de facto corporation despite the absence of de jure corporate status, the business either inadvertently failed to meet the requirements of the law or was operated with the formalities of a corporation and was attempting to achieve legal status. *See Garzo*, 303 N.Y. at 524, 104 N.E.2d at 887 (finding de facto corporation where corporate charter was inadvertently allowed to expire); *Ludlum Corp. Pension Plan Trust v. Matty's Superservice, Inc.*, 156 A.D.2d 339, 548 N.Y.S.2d 292 (2d Dep't 1989) (finding de facto corporation where dissolved corporation had paid its back taxes and prepared paperwork for reinstatement but failed to pay $55 reinstatement fee). Although courts have required varying levels of effort toward incorporation to warrant de facto corporate status, more than a minimal effort is required. *See Conway v. Samet*, 59 Misc.2d 666, 669,

300 N.Y.S.2d 243, 246 (Sup.Ct.1969) (finding that instructing attorney to file necessary papers for reincorporation was insufficient to establish de facto corporation); *George v. Yusko*, 169 A.D.2d 865, 866–67, 564 N.Y.S.2d 597, 598 (3d Dep't 1991) (holding that failure to pay back taxes precluded consideration of business as a de facto corporation).

■ There is no evidence that Lofredo operated his business as if it were a corporation or attempted to reincorporate it. In fact, all of the evidence is to the contrary. Lofredo concedes that after LL Associates was dissolved in 1977, he paid no corporate income taxes and filed no materials with the New York Secretary of State seeking reincorporation. Lofredo also testified that LL Associates has earned no income since 1990 and that he generally enters into contracts in his personal capacity. Lofredo used "Louis Lofredo Associates, Inc." letterhead and signed the Agreement in the name of LL Associates, but this is evidence of misrepresentation, not evidence that Lofredo operated his business in the corporate form. Because LL Associates had been unincorporated for nineteen years at the time of the Agreement, and because Lofredo made no effort during that period to reincorporate the company, LL Associates was not a de facto corporation when the Agreement was signed.

### B. Corporation By Estoppel

■ Defendants also argue[2] that plaintiffs and Durkin Hayes should be estopped from challenging the validity of the Agreement based on LL Associates' lack of incorporation at the time of the Agreement. As a general rule, "one who contracts or deals with an entity as a corporation thereby admits that the entity is a corporation and is estopped to deny its incorporation in an action arising out of the contract or

---

1. The parties agree that New York law governs the claims asserted under state law.

2. Although defendants do not differentiate their estoppel arguments from their de facto corporation arguments, I address the two contentions separately.

course of dealing." *International Sport Divers Ass'n, Inc. v. Marine Midland Bank, N.A.*, 25 F.Supp.2d 101, 109 (W.D.N.Y.1998). Because plaintiffs and Durkin Hayes dealt with LL Associates as if it were a corporation, Lofredo contends, they cannot now deny LL Associates' existence.

Estoppel, an equitable remedy, "does not apply in the case of fraud, as where the recognition of a pretended corporation is itself brought about by false representations that it is incorporated." 8 Fletcher Cyclopedia of the Law of Private Corporations § 3917 (1992). "Knowledge, on the part of the one claiming the estoppel, that there is no corporation, precludes an estoppel, without regard to whether the estoppel is relied upon by the corporation or by the party other than the alleged corporation." *Id.* § 3905. New York courts have applied these principles to preclude estoppel where the party asserting the estoppel was aware, and the party to be estopped was unaware, that the corporation did not exist at the time the claim arose. *See Lorisa Capital Corp. v. Gallo*, 119 A.D.2d 99, 111, 506 N.Y.S.2d 62, 71–72 (2d Dep't 1986) (declining to apply estoppel and requiring a "delinquent corporation to seek reinstatement before it can institute suit to prevent those with whom it has contracted from avoiding their obligations"); *Puro Filter Corp. of America v. Trembley*, 266 A.D. 750, 751, 41 N.Y.S.2d 472, 473 (2d Dep't 1943) ("There may be an equitable estoppel only when the one against whom it is claimed acts with knowledge or under circumstances that charge knowledge.").

█ It is undisputed that plaintiffs and Durkin Hayes were not aware before Lofredo's deposition that LL Associates was not a corporation. Nor is it disputed that Lofredo was well aware of this fact. Indeed, Lofredo misled plaintiffs into believing that his business was incorporated when in drafting the Agreement he specifically defined the "Salesperson" as "Louis Lofredo Associates, Inc." The Agreement does not specify that Lofredo is personally obligated to perform any services. Lofredo further misled plaintiffs (and the court) when he admitted the allegation in the complaint that LL Associates is a New York corporation. Consequently, equity does not require that plaintiffs or Durkin Hayes be estopped from denying the existence of LL Associates.[3]

Since there is no estoppel and LL Associates was not a de facto corporation at the time the Agreement was signed, LL Associates was not a party to the Agreement. Since all of LL Associates' counterclaims depend on the existence of a contract to which it was a party, they must be dismissed.

### C. Personal Capacity

Finally, Lofredo argues that even if LL Associates cannot enforce the Agreement, equity requires that he be allowed to do so personally.

█ "[I]t is well-settled under contract formation law in New York that there must be two parties to a contract.... If one of the parties is wanting, then one of the formal constituents of a legal transaction is absent." *International Sport Divers*, 25 F.Supp.2d at 112. *See also Kelly Asphalt Block Co. v. Barber Asphalt Paving Co.*, 211 N.Y. 68, 71–72, 105 N.E. 88, 89 (1914) (Cardozo, J.). LL Associates was not a party to the Agreement because it had neither a de jure nor a de facto existence and because equity does not require that it be treated as if it were a corporation at the time the Agreement was signed. The individual defendant, Louis Lofredo, is not named as a

---

**3.** It is especially difficult to understand how this argument applies to Durkin Hayes. Durkin Hayes was not a party to the Agreement. Although there is evidence that Durkin Hayes interacted with Lofredo during the period in which the Agreement was in effect, there is no evidence that Durkin Hayes gained any benefit from that interaction such that equity would require that Durkin Hayes be estopped from challenging the validity of an Agreement to which it was not a party.

party to the Agreement. Consequently, unless there is an equitable reason to reform the Agreement to treat Lofredo himself as a party to it, the Agreement is void from its inception for want of two contracting parties.

█ An individual who does business as a nonexistent corporation is personally liable in suits brought against the "corporation." *Poritzky v. Wachtel,* 176 Misc. 633, 634, 27 N.Y.S.2d 316, 317 (Sup.Ct. 1941); *Brandes Meat Corp. v. Cromer,* 146 A.D.2d 666, 537 N.Y.S.2d 177 (2d Dep't 1989); *Annicet Associates, Inc. v. Rapid Access Consulting, Inc.,* 171 Misc.2d 861, 864–65, 656 N.Y.S.2d 152, 154 (Sup.Ct. 1997); *Worldcom, Inc. v. Sandoval,* 701 N.Y.S.2d 834, 1999 WL 1325974, at *3 (Sup.Ct. Nov. 24, 1999); 2A N.Y.Jur.2d, Agency § 326. Lofredo asserts that because he would ultimately be personally liable for any judgment obtained by plaintiffs on their breach of contract claims if plaintiffs were suing for damages, it follows that he can assert counterclaims based on that same contract.

Equity does not require that Lofredo be allowed to assert claims under the Agreement. The cases cited above impose liability on the ground that it would be inequitable to allow individuals who form contracts on behalf of nonexistent corporations to avoid liability because their misrepresentations resulted in a contractual defect. *Poritzky,* 176 Misc. at 634–35, 27 N.Y.S.2d at 317–18; *Annicet,* 171 Misc.2d at 864–65, 656 N.Y.S.2d at 154. *See also D & W Central Station Alarm Co. v. Copymasters, Inc.,* 471 N.Y.S.2d 464, 467, 122 Misc.2d 453, 457 (Civ.Ct.1983) ("A court cannot allow a litigant to take advantage of its own wrong—the nonpayment of its own franchise taxes."). The plaintiffs in those cases believed that they had entered into valid contracts with corporations and, since those corporations did not exist, had no remedy except against the individuals who acted as agents of those purported corporations.

However, Durkin Hayes has never sued defendants. Durkin Hayes was brought into this action as a third party on defendants' counterclaim. Thus, defendants' reasoning does not apply to Durkin Hayes. Even as to plaintiffs, this case presents a far different question. Here, plaintiffs are not seeking damages. Moreover, they have agreed to withdraw all of their claims. Lofredo is not faced with the prospect of personal liability.

Nevertheless, Lofredo wishes to enforce the Agreement for his personal benefit by asserting claims against Durkin Hayes and plaintiffs. Lofredo offers no reason, and cites no authority, for reforming a defective contract for his benefit when his own misrepresentation is responsible for the defect. Lofredo drafted the Agreement himself and signed it on behalf of LL Associates, not himself personally. The Agreement defines "Salesperson" as LL Associates, not Louis Lofredo. Except for his signature and the use of his name in the name of the purported corporation, there is no mention of Louis Lofredo in the Agreement. Lofredo concedes that he knew LL Associates had been defunct for nineteen years at the time he drafted and signed the Agreement. He thus knew, or should have known, that the Agreement was invalid, and cannot now complain that it should be enforced for his benefit. *See International Sport Divers,* 25 F.Supp.2d at 112 (individual who signs contract as president of nonexistent corporation "is not a party to the contract and therefore does not have the capacity to sue on it.").

Furthermore, this misrepresentation created an impression that Lofredo's business was more substantial than it actually was. Frank Florio states that "[w]hen Florio Entertainment, Inc. entered into an agreement with Louis Lofredo Associates, Inc., it was important to me that Louis Lofredo Associates, Inc. was a corporation." (Florio Aff. ¶ 2.) Lofredo offers nothing to contradict the assertion that plaintiffs relied on LL Associates' corporate status when entering the Agreement. Indeed, since Lofredo knew his corporation was defunct, the only explanation for

his misrepresentation is that he believed that he gained some advantage from using corporate letterhead and portraying himself as a corporation. Reforming the contract for Lofredo's benefit would not only fail to protect any legitimate interest of Lofredo but would also prejudice plaintiffs' interest in being bound only to parties which are what they claim to be. It would thus be inequitable to construe the Agreement as a contract with Lofredo personally.

## CONCLUSION

For the foregoing reasons, Durkin Hayes' motion for summary judgment and plaintiffs' motion for summary judgment dismissing all of defendants' counterclaims against them are granted. In accordance with plaintiffs' agreement, the complaint is also dismissed. This case is closed.

SO ORDERED.