The FONDA GROUP, INC., Plaintiff,

v.

Paul LEWISON, Wendy Lewison, and
Michael Lewison, Defendants.

No. 2:99–CV–92.

United States District Court,
D. Vermont.

Aug. 29, 2001.

Michael B. Rosenberg, Burak, Anderson & Melloni, PLC, Burlington, VT, for Fonda Group, Inc.

Donald J. Rendall, Jr., Sheehey, Furlong, Rendall & Behm, Burlington, VT, for Paul Lewison, Wendy Lewison, Michael Lewison.

## OPINION AND ORDER

SESSIONS, District Judge.

In this contract action brought by The Fonda Group, Inc. ("Fonda") against Paul Lewison, Wendy Lewison, and Michael Lewison (collectively, "the Lewisons"), both sides have moved for summary judgment. For the reasons that follow, the Lewisons' motion for summary judgment (Paper 97) is **DENIED** and Fonda's motion for summary judgment (Paper 90) is **GRANTED.** Judgment is entered against the Lewisons and in favor of Fonda in the amount of $180,345.42, plus: (1) interest accruing at a rate of twelve percent per annum from March 1, 1999, to the date of payment and (2) reasonable costs, including attorneys' fees, incurred in collecting this judgment, to be determined after a hearing.

### I. Background

#### A. Facts

Despite the Lewisons' repeated assertions to the contrary, the material facts relevant to these motions are not genuinely in dispute.

Fonda is a Delaware corporation registered with the Vermont Secretary of State to do business in Vermont. Paul and Wendy Lewison are a married couple and residents of Florida. Michael Lewison, their son, is a resident of New York. Each of the Lewisons have acted as officers and/or agents of one of the two purported corporations called Neptune Paper Enterprises, Inc. ("NPE") and Neptune Paper Products, Inc. ("NPP") (occasionally referred to together as "the Neptune entities"), the original defendants to this action.

Sometime in the early 1990s, and at several points thereafter, Wendy Lewison offered to buy Fonda's paper can manufacturing line, but Fonda did not accept.

Around November of 1996, Mike Hastings, then-president of Fonda, contacted Wendy Lewison and finally offered to sell her the manufacturing line. Wendy Lewison immediately accepted the offer. Very shortly after that phone call, Wendy and Paul Lewison went to Vermont to meet with Hastings, discuss details, and tour Fonda's plant.

On April 17, 1997, Paul Lewison, acting as CEO of NPP, executed an agreement with Fonda (subject to NPP's ability to obtain financing) under which NPP was to purchase Fonda's paper can manufacturing equipment for $250,000.

Because NPP was unable to obtain financing to consummate the April 17 agreement, however, on August 29, 1997, Michael Lewison, acting as CEO of NPE, executed a new agreement, which modified and amended the April 17 agreement.[1] Under the August 29 agreement, NPE purchased Fonda's paper can manufacturing equipment for $250,000, with a down payment of $25,000. Fonda then executed a loan to NPE for the remaining $225,000. In return for that loan, Michael Lewison, on behalf of NPE, executed a promissory note ("the note") in favor of Fonda in the principal amount of $225,000 and a security agreement in favor of Fonda covering the collateral. Wendy Lewison signed the note as an attesting witness.

The note obligated NPE to make quarterly payments to Fonda in the amount of $13,760.26. It further provided that if payment was not made within five business days after receipt of written notice of de-

fault, Fonda could accelerate NPE's obligations under the note.

Also on August 29, 1997, Paul Lewison, on behalf of NPP, executed a guaranty of the obligations of NPE under the agreement.[2] Importantly, the April 17 agreement identified NPP as a New Jersey corporation, the security agreement identified NPE as a New Jersey corporation, and the "Assignment and Assumption of Agreement" identified both NPE and NPP as New Jersey corporations. At the time, however, neither NPP nor NPE were legally incorporated anywhere.[3]

On June 4, 1998, the Lewisons successfully incorporated two entities called "Neptune Paper Enterprises, Inc." and "Neptune Paper Products, Inc." in Delaware. Yet on September 5, 1998, Paul Lewison executed a verified complaint on behalf of NPE against Fonda in a separate action brought in this Court, *Neptune Paper Enters. v. Fonda Group, Inc.*, No. 2:98–CV– 309 ("*Neptune I*"), in which he characterized NPE as a New Jersey corporation. *Neptune I* settled on November 5, 1998, when a Fonda representative and Paul Lewison (on behalf of both NPE and NPP) executed a "Settlement Agreement and Release." In that document, NPE and NPP, on the one hand, and Fonda, on the other, released each other and each of their representatives from all claims based upon or relating to the lawsuit, with the important exception that the release was "not intended ... to affect the respective rights and obligations of [NPE] and/or [NPP] under the Note; Security Agree-

---

1. Paul Lewison, on behalf of NPP, and Michael Lewison, on behalf of NPE, also jointly executed an "Assignment and Assumption of Agreement" on August 29, 1997.

2. The note, the security agreement, and the guaranty required that NPE and NPP pay all reasonable attorneys' fees and collection costs

in the event that they defaulted on their obligations.

3. NPP had been incorporated in New Jersey from December 30, 1985, until July 30, 1993, when it was voided by proclamation. NPE, on the other hand, has never been incorporated in New Jersey.

ment and/or the Guaranty. . . ." Settlement Agreement and Release ¶ 6 (Paper 98, Ex. A).

Thus, under the terms of the release, NPE was still obligated to make regular quarterly payments to Fonda of $13,760.26. One such payment was due on March 1, 1999; however, NPE failed to make that payment in a timely fashion. As a result, on March 9, 1999, Fonda delivered a notice of default to NPE demanding payment; NPE failed to deliver the payment within five business days from receipt of the notice, as required by the note.

On March 23, 1999, Fonda notified NPE that as a result of its failure to pay the most recent quarterly payment and its failure to cure the default within five days of receipt of written notice of the default, Fonda had accelerated NPE's obligations.[4] Since that default, none of the Lewisons (nor NPP or NPE) has paid any of the money owed under the note, security agreement, or guaranty.

On March 1, 2000, NPE and NPP's legal status as Delaware corporations was voided due to nonpayment of taxes for the two preceding years.

### B. Procedural history

The procedural history of this case is rather unusual and complex. On March 29, 1999, Fonda filed the instant action for breach of contract against NPE and NPP, seeking payment of NPE and NPP's obligations under the note, security agreement, and guaranty, reasonable costs as provided in those documents, and repossession of the collateral (i.e., the paper can manufacturing equipment that was the subject of the original agreement). In its original complaint, Fonda alleged that it was a Delaware corporation registered to do business in Vermont; that NPE and NPP were New Jersey corporations with their principal places of business in New Jersey; and that the Court had jurisdiction under 28 U.S.C. § 1332 (Diversity of Citizenship) because the dispute was between citizens of different states and the amount in controversy exceeded $75,000.

NPE and NPP filed an answer to Fonda's complaint on June 16, 1999, in which they "admitted" that NPE and NPP were Delaware corporations. At the time, NPE and NPP did not, however, move to dismiss the case for lack of jurisdiction or otherwise bring to the attention of the Court or Fonda that the basis for diversity jurisdiction might be absent. Moreover, on August 25, 2000 (after NPE and NPP were voided as Delaware corporations for nonpayment of taxes), NPE and NPP filed an amended answer in which they again "admitted" (this time falsely) that they were Delaware corporations.

Fonda moved for summary judgment on July 28, 1999, which motion the Court provisionally granted in a written order on October 21, 1999. The Court held that the defendants could "assert failure of consideration due to violation of the non-compete clause as an affirmative defense to Fonda's breach allegations," but because they had failed to submit evidence to support the allegation that Fonda had violated the clause, Fonda was entitled to summary judgment. Mem. and Order at 10 (Paper 18). However, the Court gave NPE and NPP thirty days to submit such evidence and move for reconsideration of the grant of summary judgment.

Accordingly, on November 22, 1999, NPE and NPP moved for reconsideration

---

**4.** It is undisputed that Paul Lewison received both the notification of default and the notification of acceleration from Fonda.

of the Court's order. In support of that motion, Wendy Lewison filed an affidavit in which she stated that she was the Vice President of Sales for NPP and described her alleged receipt of Fonda's remaining paper can inventory. *See* Aff. of Wendy Lewison (Paper 32). After hearing oral argument, the Court granted NPE and NPP's motion to reconsider and denied Fonda's motion for summary judgment.[5]

The Court held a one-day bench trial on November 28, 2000. The Lewisons did not appear, nor did NPE and NPP call any witnesses. After hearing the testimony of Fonda's witnesses and the arguments of counsel, the Court found that Fonda did not violate the non-compete clause and that NPE and NPP were therefore required to make payments, as provided by the contractual documents, to Fonda. In the alternative, the Court found that even if Fonda technically violated the non-compete clause, such a violation was insubstantial and did not warrant rescission of the contract. Accordingly, the Court entered judgment for Fonda in the amount of $221,636, plus costs. The Court also issued an injunction, enjoining NPE and NPP from selling or otherwise disposing of the collateral covered by the agreement, and requiring NPE and NPP to file an affidavit by December 4, 2000, disclosing the location of the collateral or the proceeds thereof.

Shortly after the Court entered judgment on behalf of Fonda, on December 5, 2000, Fonda moved to amend its complaint to add the Lewisons as defendants to the action, arguing that the Lewisons had purported to act on behalf of the defendant "corporations" but that in fact, NPE and

NPP had no legal existence on August 29, 1997, the date that the underlying transactions were consummated. Moreover, Fonda noted that NPE and NPP, as Delaware corporations (created on June 4, 1998), had been voided on March 1, 2000, due to nonpayment of taxes for the two preceding years, and thus no longer legally existed. Fonda argued, "[s]ince all three of the Lewisons assumed to act for nonexistent principals, they are personally liable on the corporations' contracts with Fonda." Pl.'s Mot. to Add Add'l Defs. at 4–5 (Paper 60). Fonda concluded that "[t]he bizarre actions of Defendants and the Lewisons over the past few weeks suggest that the corporate Defendants are judgment-proof shells. Adding the individuals hiding behind these bogus corporations as party defendants will give Plaintiff a fighting chance to collect the Judgment awarded by this Court." *Id.* at 5.

Shortly thereafter, in a letter dated December 21, 2000, counsel for NPE and NPP suggested that the Court lacked subject matter jurisdiction over the case, as NPE and NPP were Delaware corporations (as was Fonda) at the time that the matter was initially filed, and therefore, there was no diversity jurisdiction. Fonda's response to this letter was that the Lewisons—not NPE and NPP—were the real parties in interest and that there was complete diversity between the Lewisons and Fonda. Thus, Fonda argued, the Court should grant Fonda's motion to add the Lewisons as defendants and amend the judgment accordingly.

On January 5, 2001, the Court held a hearing on this issue.[6] During the hearing, Fonda moved to substitute the Lewi-

---

5. During the eventual bench trial, the Court expressed concerns that it may have relied on intentionally untruthful affidavits submitted by the Lewisons when it denied Fonda's motion for summary judgment.

6. The Lewisons were not present for this hearing.

sons as defendants instead of NPE and NPP and to amend the injunction to reflect this substitution, in lieu of their previously filed motion to amend the complaint. The Court took this motion under advisement, scheduled another hearing for January 12, 2001 (one week later), and ordered that the Lewisons appear for that hearing.

In the intervening week, on January 10, 2001, counsel for NPE and NPP filed a notice of bankruptcy, indicating that NPE and NPP had initiated Chapter 7 bankruptcy proceedings on the previous day. On January 11, one day before the scheduled hearing, NPE and NPP filed an emergency motion to stay all proceedings in this Court pursuant to 11 U.S.C. § 362(a) of the Bankruptcy Code.

The Court went forward with the scheduled hearing on January 12, 2001, addressing the motion for the stay first. The Court orally denied the motion for the stay, vacated the judgment in favor of Fonda, and ordered Fonda to file an amended complaint substituting the Lewisons as defendants. In a written order following the hearing, the Court explained:

> Given that the Lewisons have continually represented to Fonda that NPE and NPP were New Jersey corporations at crucial times during the transactions underlying this litigation,[7] and most significantly perhaps, when they were not corporations at all, they cannot now allege that NPE and NPP, as *Delaware* corporations, have filed for bankruptcy and are thus, at least temporarily, immune from this lawsuit. Further, given the Court's ruling below, substituting the Lewisons as the real defendants in interest, the status of NPE and NPP as New Jersey or Delaware corporations is irrelevant. None of the Lewisons, as far as the Court is aware, have filed for bankruptcy protection, and the fact that their phony corporations are now involved in bankruptcy proceedings is immaterial.

Op. and Order at 6–7 (Paper 82).

With respect to Fonda's motion to amend the judgment, adding the Lewisons as defendants, the Court stated that "[b]ecause the Lewisons purported to act as officers for the 'nonexistent New Jersey entities,' NPE and NPP, for several years, they can be held personally liable for the obligations they incurred in the names of those entities."[8] *Id.* at 7 (citation omitted). The Court reasoned that "[u]nder New York law, which the parties agree govern this dispute,[9] an individual who purports to act for a nonexistent corporation is personally responsible for the obligations it incurs thereby." *Id.* at 8 (footnote omitted) (citing *Brandes Meat Corp. v. Cromer,* 146 A.D.2d 666, 667, 537 N.Y.S.2d 177 (N.Y.App.Div.1989)). However, because the Court found that "it would be unjust" to enforce the existing judgment against the Lewisons as defendants without their ever having had the

---

**7.** The fact that embedded in NPE and NPP's answer was an "admission" that NPE and NPP were Delaware corporations does not save the Lewisons from taking responsibility for their repeated and seemingly deliberate misrepresentations. [Footnote 5 in original.]

**8.** Because there was no evidence that Wendy Lewison had executed any of the contractual documents underlying the litigation, the Court expressly left open the question of whether she could be held liable. *See id.* at 7 n. 6.

**9.** In fact, the parties did not and still do not agree on what law should govern this particular issue. The Lewisons argue that because the contracts contain a clause selecting New York as the governing law, New York law should apply. Fonda argues that New Jersey law should apply to the determination regarding the status of alleged New Jersey corporations. Because the Court finds that the Lewisons cannot prevail even under New York law, it need not resolve this issue.

opportunity to defend against the charges, the Court instead vacated the judgment and ordered that Fonda file an amended complaint substituting the Lewisons as defendants, that the Lewisons file an answer, and that the parties "proceed with discovery, and ultimately, if necessary, a new trial." *Id.* at 8–9.

## II. Discussion

### A. Summary judgment standard

Summary judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has demonstrated the absence of any genuine issue of material fact, the nonmoving party "may not rest upon the mere allegations or denials of the [nonmoving] party's pleading, but the [nonmoving] party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is mandated, however, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. A dispute is considered genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. While the Court must draw all inferences from the facts in the light most favorable to the non-moving party, that party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986).

### B. The Lewisons' motion

▮ The Lewisons' filed their cross-motion for summary judgment on April 16, 2001. In support of that motion, they argue that all three Lewisons were released from liability by the "Settlement Agreement and Release" executed at the end of *Neptune I.* Second, they assert that Wendy Lewison cannot be held liable because she did not execute any of the contractual documents underlying Fonda's lawsuit.

#### 1. Release

The Settlement Agreement and Release executed at the end of *Neptune I* by its terms absolved NPE and NPP and any of their representatives of any claims that Fonda had or could someday have "by reason of any matter, cause or thing arising out of, based upon or in any way relating to the Action, or any of the transactions, occurrences, acts or omissions set forth or alleged in pleadings file [sic] in the

Action," with the express exception that the release was not to affect the Neptune entities' obligations under the note, security agreement or guaranty. Settlement Agreement and Release ¶ 6. The Lewisons argue that because at the time of the release, NPE and NPP were incorporated in Delaware and the Lewisons were officers or agents of NPP and NPE, this release provides the Lewisons with a complete defense to Fonda's current claims. The Court disagrees.

The release, although it did not identify the place of incorporation of the Neptune entities, obviously applies to the parties that executed the underlying contractual documents and the complaint in that action. The contractual documents and the Verified Complaint filed by Paul Lewison in *Neptune I*, however, describe NPE and NPP exclusively as New Jersey corporations (although in fact, at the time of the execution of the contracts, NPE and NPP were not incorporated anywhere).[10] Since NPE and NPP had neither de jure nor de facto status as New Jersey corporations (i.e., they essentially did not exist), neither they nor their alleged agents could be released from anything. The fact that the Lewisons created corporations in Delaware bearing identical names after the execution of the contracts—especially given their repeated misrepresentations that NPE and NPP were New Jersey corporations and their apparent failure to notify Fonda of this important "change" in the Neptune entities' corporate status—cannot alter this conclusion. The "after-formed" Delaware corporations, of which the Lewisons

were the alleged representatives, were simply not parties to the release.

Thus, the Lewisons' argument that they were released from personal liability on the obligations of their nonexistent corporations is meritless, and their motion for summary judgment on this basis must be denied.

### 2. Wendy Lewison

■ The Lewisons next argue that even if the release does not absolve all of the Lewisons from liability on Fonda's claims, Wendy Lewison cannot be held individually liable because she did not personally execute any of the underlying documents. They argue that "[o]nly [11] '[o]ne who *signs* an agreement on behalf of a nonexistent [corporation] may himself be held liable on that agreement.'" Defs.' Mot. for Summ.J. at 8 (Paper 97) (quoting *Grutman v. Katz*, 202 A.D.2d 293, 293, 608 N.Y.S.2d 663 (N.Y.App.Div.1994)) (emphasis and alterations supplied by the Lewisons).

While the Lewisons are correct that it is well-settled under New York law that one who signs an agreement on behalf of a nonexistent corporation can be held personally liable on that agreement, none of the cases cited by the Lewisons establish that executing an agreement is the *only* predicate to personal liability. On the contrary, the language and reasoning of several New York cases demonstrate that acting in an assumed corporate capacity on behalf of a nonexistent corporation—not executing the underlying contractual documents—is all that is required for personal liability on the corporate obligations. *See*

---

**10.** Moreover, as explained more fully below, the Lewisons have not come forward with any evidence that would permit this Court to infer that NPE and NPP were de facto New Jersey corporations at the relevant times.

**11.** Importantly, the word "only" does not modify the rule that signatories can be held liable for the obligations they incur on behalf of nonexistent corporations in the *Grutman* case, nor apparently in any of the other cases cited by the Lewisons in support of this argument.

*Cromer,* 146 A.D.2d at 667, 537 N.Y.S.2d 177 (holding that individuals can be liable for obligations incurred while they "purported to act on behalf of a corporation which had neither a de jure nor a de facto existence"); *Fuller v. Rowe,* 57 N.Y. 23, 1874 WL 11170 (1874) ("That parties assuming to act in a corporate capacity without a legal organization as a corporate body, are liable as partners to those with whom they contract is not denied; but when it is sought to charge any one of them as a corporator or as a partner, the same rule applies to each. If as a corporator, he must be shown to have been such when the contract sued upon was made. If as a partner *he must be shown to have been a member of the firm when the contract sued upon was made.*") (emphasis added) (citation omitted); *Worthington v. Griesser,* 77 A.D. 203, 79 N.Y.S. 52, 55–56 (1902) ("The defendants pretended to be something which they were not [a corporation], but they nevertheless contracted a liability in a joint undertaking, for which they agreed to pay. Thereby they charged themselves with a personal liability for the payment of the obligation created. . . . *[L]iability is made to depend, not upon their acts as officers of a corporation, but as individuals engaged in a joint venture.*") (emphasis added) (applying an Illinois statute, but noting that the statute "is, in substance and effect, a declaration of the common law of [New York]"). Thus, under New York law, the fact that Wendy Lewison did not personally "execute" any of the contractual documents [12] does not save her from liability; her motion for summary judgment must be denied.

12. As noted above, she did, however, sign the note as an attesting witness.

13. Fonda apparently characterizes its motion in this way because it is substantially similar to the motion it filed against NPE and NPP on July 28, 1999, except that it also addresses

## C. Fonda's motion

Fonda filed its "renewed" [13] motion for summary judgment on March 15, 2001, arguing that it is entitled to summary judgment because the Lewisons do not genuinely dispute that there was a breach of the note, security, and guaranty, and that there is no genuine factual dispute regarding the Lewisons' capacity for personal liability for that breach.

In opposition to Fonda's motion, the Lewisons argue, first, that the Court should deny the motion as premature under Federal Rule of Civil Procedure 56(f) because the Lewisons have not had enough opportunity to conduct discovery to defend themselves against Fonda's claims. Second, the Lewisons argue that Fonda's motion should be denied because it lacks the evidentiary support required by Rule 56. And finally, the Lewisons argue that there are disputed facts "central to [Fonda']s bid to hold the Lewisons personally liable" for the obligations of NPE and NPP. Defs.' Opp'n to Pl.'s Renewed Mot. for Summ.J. at 3 (Paper 95) [hereafter, "Defs.' Opp'n"]. The Court addresses these arguments in reverse order.

### 1. Factual disputes regarding personal liability

The Lewisons allege that "New York law provides the Lewisons with several complete defenses to individual liability, the proper application of which turns on facts that remain in dispute." *Id.* at 15. Specifically, the Lewisons allege that there are factual disputes regarding NPE and

Wendy Lewison's capacity for personal liability on the breach (since the Court essentially held in a previous order that Paul and Michael Lewison, as signatories on the contracts, could be liable).

NPP's status as de facto corporations or corporations by estoppel and Wendy Lewison's role in the transactions relevant to her capacity for individual liability. However, the Court finds that construing the facts in the light most favorable to the Lewisons and making every inference in their favor, the Lewisons have not met their burden of presenting evidence to support the finding that any of these "defenses" under New York law could apply.

### a. De facto corporate status

As the Lewisons point out, under New York law, "[i]n order for a business to be considered a de facto corporation, it must function as if it were a corporation and make substantial efforts to either incorporate or remedy any defects of incorporation upon their discovery." *Animazing Entm't, Inc. v. Louis Lofredo Assocs.*, 88 F.Supp.2d 265, 269 (S.D.N.Y.2000) (construing New York law). However, the only facts that the Lewisons allege "would establish that NPE and NPP were de facto corporations at the time the parties entered into the Agreement," Defs.' Opp'n at 16, are the following:

> When the parties' [sic] began their negotiations, Paul Lewison informed Fonda that NPE would be created to be the purchasing entity, and that he intended to organize it in Delaware. It was Mr. Lewison's understanding and belief that an incorporation representative organized NPE and NPP as Delaware corporations in early April 1997.
>
> As of early 1998, Mr. Lewison continued to believe that NPE and NPP had been incorporated in Delaware in April 1997. The Delaware Secretary of State corporation records indicate that these entities were incorporated in Delaware on June 4, 1998, where they remain incorporated.

*Id.* (citations omitted) (citing Decl. of Paul Lewison).

The Court does not see how, as the Lewisons contend, "[t]his evidence supports the conclusion that NPE and NPP functioned as corporations and that substantial efforts were undertaken to incorporate the entities...." *Id.* at 17. The mere fact that Paul Lewison *said* he was going to incorporate NPE and that he "*underst[ood] and belie[ved]*" that it was incorporated in Delaware at the time of the transactions does not establish "substantial efforts" at incorporation. Moreover, because the Lewisons have not even alleged that a certificate of incorporation was prepared before the transactions underlying this lawsuit took place, their assertion that the Neptune entities should be treated as de facto corporations under New York law cannot be sustained. *See Conway v. Samet*, 59 Misc.2d 666, 669, 300 N.Y.S.2d 243 (N.Y.Sup.Ct.1969) ("More is required to establish the *de facto* corporation defense than giving instructions to an attorney; there must have been a colorable attempt to comply with the statutes governing incorporation *made before the event against which the defense is asserted* and without any certificate of incorporation having been even prepared or acknowledged there can be no *de facto* corporation. Since defendant does not allege that any certificate of incorporation was ever prepared, it is unnecessary to consider whether failure ultimately to file a certificate of incorporation is fatal to the defense....") (emphasis added) (citation and quotation marks omitted).

Furthermore, given the Lewisons' repeated mischaracterizations of NPE and NPP as New Jersey corporations at crucial times during the transactions preceding this lawsuit, the Court is not persuaded that establishing de facto corporate status in Delaware—if the Lewisons could

successfully do this—should effectively insulate the defendants from liability for transactions they engaged in on behalf of supposed New Jersey corporations.[14]

### b. Corporations by estoppel

The Lewisons contend that there are disputed material facts as to whether Fonda can be estopped from challenging NPE and NPP's corporate status. This argument is without merit.

■■■■ Under New York law, which the Lewisons assert should be applied, the doctrine of estoppel may only be invoked where the corporation had "at least de facto existence." *Puro Filter Corp. of Am. v. Trembley,* 266 A.D. 750, 751, 41 N.Y.S.2d 472, *appeal denied,* 266 A.D. 848, 43 N.Y.S.2d 635 (N.Y.App.Div.1943). Furthermore, "[t]here may be an equitable estoppel only when the one against whom it is claimed, acts with knowledge or under circumstances that charge knowledge." *Id.* Thus, in order for the Lewisons to establish that NPE and NPP should be treated as corporations by estoppel, they would have to show both that they were de facto New Jersey corporations *and* that Fonda knew (or should have known) that NPP and NPE were not legally incorporated at the time they entered into the contracts. As demonstrated above, the Lewisons have fallen far short of presenting evidence that could support a finding of de facto corporate status. Moreover, the only evidence they point to in support of the notion that Fonda knew of the Neptune entities' lack of legal corporate status is the allegation that "at no time during the parties' negotiations did Fonda question the corporate existence of NPE or NPP, despite ample opportunity to do so."

Defs.' Opp'n at 18. Fonda's failure to question that status, however, cannot establish that it "act[ed] with knowledge or under circumstances that charge knowledge," *Puro Filter,* 266 A.D. at 751, 41 N.Y.S.2d 472. Therefore, the Court finds that even construing the evidence in the light most favorable to the Lewisons, it cannot conclude that NPE and NPP might be entitled to be treated as corporations by estoppel.

### c. Wendy Lewison's role in the transactions

In the Court's previous order, vacating the post-trial judgment, the Court expressly left open the question of whether Wendy Lewison could be liable on NPE and NPP's obligations, since she did not execute any of the underlying contractual documents. The Lewisons assert that because she did not execute the documents on behalf of NPE or NPP, Wendy Lewison cannot be liable. In the alternative, the Lewisons argue that even if signing the documents is not a requirement for liability, there are factual disputes about Wendy Lewison's role in the transactions that preclude summary judgment for Fonda.

The Lewisons have not cited a single case that stands for the proposition that representatives of nonexistent corporations can only be held liable on documents that they personally execute. Instead, as stated above, the rule in New York is that individuals can be liable for obligations incurred while they "purported to act on behalf of a corporation which had neither a de jure nor a de facto existence . . . ." *Cromer,* 146 A.D.2d at 667, 537 N.Y.S.2d 177; *see also Fuller,* 57 N.Y. 23, 1874 WL 11170; *Worthington,* 79 N.Y.S. at 55–56.

---

**14.** As Fonda has argued previously, "that the Lewisons created a Delaware 'Neptune Paper Products' after the fact does not change the fact that the agents of the bogus New Jersey entity are personally liable on its contracts." Pl.'s Reply Mem. in Supp. of its Mot. to Add Add'l Defs. at 6 (Paper 70).

Thus, the issue is not whether Wendy Lewison signed the relevant documents, nor even whether she " 'play[ed] a crucial role' in the transaction," Defs.' Opp'n at 20, but only whether she was acting in an assumed corporate capacity—as a representative of one or more of the purported corporations—at the time that the contracts were executed. That she acted in such a capacity before, during, and after the time of the transactions is undeniably so, even construing the facts in the light most favorable to the Lewisons.

Paul Lewison testified at his deposition in April 2000 that Wendy Lewison has been an officer of NPP and "is certainly a functionary of the company." Dep. of Paul Lewison at 7–8 (Paper 70, Ex. A); *see also id.* at 8 (stating that he is "not quite sure" if Wendy Lewison was at the time still "formally" an officer of NPP); *id.* at 8–9 (admitting that Wendy Lewison is one of the owner/stockholders of NPE). Furthermore, in Wendy Lewison's affidavit filed in this action on January 28, 2000, she stated that she was still Vice President of Sales for NPP. The Lewisons have not presented any evidence, moreover, that would undermine the conclusion that Wendy Lewison had been acting in an assumed corporate capacity for NPP in 1997.[15] Thus, the undisputed facts establish that she was.

Moreover, even if more is required for personal liability under New York law than acting in an assumed corporate capacity, the Court agrees with Fonda that the undisputed facts establish that Wendy Lewison played an important role in the transactions giving rise to this litigation. First, by Wendy Lewison's own testimony,

she was the one who first suggested to Fonda that the Lewisons (presumably through one or more of their purported corporations) buy Fonda's paper can manufacturing line, *see* Dep. of Wendy Lewison at 24–26, and made repeated offers thereafter to purchase it, *id.* at 28. It was Wendy Lewison who received and returned the phone call from Hastings, the president of Fonda, when he called to take her up on the offer of buying the manufacturing line. *See id.* at 32–34. And finally, it was Wendy Lewison who, in response to Hasting's question, "[H]ow much of the business would you like[?]," answered, "We will take it all," without even consulting Paul Lewison. *See id.* at 35.

After that phone call, Ms. Lewison testified that Paul Lewison took over negotiating the purchase price, although Ms. Lewison accompanied him to meetings with Fonda representatives, including their initial visit to the Fonda plant, applied for the commercial loan in connection with the purchase, made the "initial call" to the rigger recommended by Fonda for removal of the equipment, and performed various other duties in connection with the purchase of Fonda's paper can manufacturing business. Furthermore, in a hearing on a preliminary injunction in this case, Ms. Lewison testified, in response to a question about whether she was involved with the commercial loan application in connection with the purchase: "I was— since we are not only partners but husband and wife, I am cognizant of what is going on at all times...." Hr'g on Prelim.Inj. at 7 (Paper 90, Ex.). All in all, it is clear that, despite Paul Lewison's declara-

---

15. Wendy Lewison's deposition testimony suggests that she was the official Vice President of Sales of NPP until at least December 31, 1999, and that after that date, she still performed all of the duties of the Vice President of Sales, simply without the official title.

*See* Dep. of Wendy Lewison at 21–22 (Paper 70, Ex. B). Furthermore, she does not at any point seem to suggest that there was a break in her duties in 1997, when the contracts at issue here were executed.

tion that he "did not consider Wendy to be, and she was not, [his] business partner in connection with this transaction," Decl. of Paul Lewison at ¶ 1 (Paper 100), Ms. Lewison played a substantial role in the purchase underlying this litigation, and the Lewisons' arguments to the contrary are without merit.

### 2. Lack of evidentiary support

■ The Lewisons contend that Fonda's motion must be denied because it lacks the evidentiary support required by Federal Rule of Civil Procedure 56. Rule 56 provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Lewisons argue that because Fonda relies primarily on the findings of fact in the Court's vacated order and the original complaint and answer (filed by NPE and NPP, rather than the Lewisons), Fonda's motion must be denied. The Lewisons further argue that Fonda's reliance on the affidavit of Harvey Friedman is insufficient because it does not "establish the facts necessary to hold the Lewisons individually liable on the Agreement...." Defs.' Opp'n at 14.

First, the Court disagrees with the Lewisons that Fonda's reliance on the findings of fact in the Court's vacated order and the original complaint and answer filed in this case should defeat Fonda's motion for summary judgment. While it is true that the Court felt it would be unjust to simply substitute the Lewisons as parties to an action in which judgment had already been rendered, that does not make the factual findings in that opinion without precedential value. The Court simply did not want to bind the Lewisons to a judgment in which they did not have any opportunity

to defend themselves as actual party defendants. They now have that opportunity, and if they wish, may produce evidence that the findings made by the Court (or the admissions made by NPE and NPP in their answer) are inaccurate. This they have not even attempted to do.

Moreover, the Lewisons do not contend that the Friedman affidavit fails to establish that there was a breach, but only that it fails to show why the Lewisons should be personally liable. Therefore, the Court's vacated order and the original complaint and answer are not necessary to Fonda's motion. The Lewisons have essentially conceded, and it is clear from reviewing the affidavit, that the Friedman affidavit suffices to establish that there was an agreement and a breach.

Hence, the only issue is whether there is evidentiary support for Fonda's contention that the Lewisons should be held personally liable on NPE and NPP's obligations. The Court concludes that there is more than sufficient evidence to establish this, as set forth above. There is no question that Michael and Paul Lewison were acting in an assumed corporate capacity on behalf of NPE and NPP at the time of the transactions, and that they each executed some of the underlying documents. Further, the deposition testimony of Paul and Wendy Lewison establish that Wendy also participated in the transactions and was acting in an assumed corporate capacity at the time the contracts were executed, and is thus also personally liable. Fonda is not required to produce evidence to support the absence of any affirmative defenses the Lewisons might have, since proving such defenses would be the Lewisons' burden at trial. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548 ("the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to estab-

lish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Rather, the Lewisons are required to come forward with such evidence to defeat Fonda's motion, *see* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."), which they have failed to do.

### 3. Prematurity of motion

■ The Lewisons' first argument, which the Court addresses last, is that the Court should deny Fonda's motion as premature under Federal Rule of Civil Procedure 56(f).[16] Specifically, the Lewisons assert that they have not had adequate time to conduct discovery with regard to the Neptune entities' possible status as de facto corporations or corporations by estoppel, or Wendy Lewison's role in the transactions underlying the lawsuit.

Under Rule 56(f), "[t]he Court has discretion to postpone ruling on a Summary Judgment motion if a party needs additional discovery to explore facts essential to justify the party's opposition." *Vt. Elec. Power Co. v. Hartford Steam Boiler Insp. & Ins. Co.*, 72 F.Supp.2d 441, 448 (D.Vt. 1999) (quotation marks omitted). In the Second Circuit, a party seeking such additional time for discovery must submit an affidavit satisfying a four-part test. *See Paddington Partners v. Bouchard*, 34 F.3d

1132, 1138 (2d Cir.1994). "The affidavit must include: 1) the nature of the uncompleted discovery, i.e., what facts are sought and how they are to be obtained; 2) how those facts are reasonably expected to create a genuine issue of material fact; 3) what efforts have been made to obtain those facts thus far; and 4) why those efforts were unsuccessful." *Vt.Elec.Power*, 72 F.Supp.2d at 448.

The Lewisons submitted a declaration by their attorney, Donald J. Rendall, Jr. ("Attorney Rendall"), explaining that he had tried to prepare a discovery schedule in cooperation with counsel for Fonda, but that Fonda's counsel replied that "the Plaintiff did not intend to prepare a discovery schedule and did not consider discovery by either party to be necessary or appropriate." Decl. of Donald J. Rendall, Jr. ¶ 3 (Paper 99). Attorney Rendall further stated that because of the earliness of Fonda's motion, the Lewisons have not yet been able to seek evidence about, *inter alia:* the documentation provided to Fonda regarding the corporate status of NPP and NPE at the time the contracts were executed; the "steps taken" to incorporate NPE and/or NPP at the time the contracts were executed and thereafter; the "steps taken" to cure any defects in NPE's and/or NPP's corporate status; the steps Fonda took to examine NPE's and/or NPP's corporate status, its creditworthiness, and the creditworthiness of the Lewisons; Fonda's reliance on the creditworthiness of NPE and/or NPP or the Lewisons in entering into the contracts; Fonda's knowledge regarding the corporate status of NPE and/or NPP; the steps Fonda took to ascertain the corporate status of NPE and/or NPP after they filed their answer to Fon-

---

16. Rule 56(f) provides:
  Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

da's original complaint in this action; and "Wendy Lewison's role in connection with the negotiation, documentation and/or closing of the Agreement." *Id.* ¶ 4. Attorney Rendall then asserts that "each of these areas of potential discovery is relevant, indeed central, to the Lewisons' legal defenses to the claims asserted by Fonda." *Id.* ¶ 5.

At the outset, the Court disagrees with Attorney Rendall's assertion that each of these areas about which the Lewisons allegedly need to conduct discovery is relevant to their claims. For example, the Court does not see how (nor have the Lewisons explained how, as is their burden) Fonda's examination of or reliance on NPE's and/or NPP's creditworthiness is relevant to any of their defenses. Neither does the Court understand what relevance any steps Fonda might have taken to ascertain the corporate status of NPP or NPE *after* they filed their answer in this action could have to any defenses the Lewisons might assert.

As to the assertion that the Lewisons need to conduct discovery with regard to the "steps taken" to incorporate NPE and NPP (presumably to establish their status as de facto corporations), that evidence should either be in their possession or readily available to them, since they are obviously the ones who should have taken such steps. Clearly, Fonda would not have access to that information. If counsel for the Lewisons wanted to suggest that such evidence was in possession of some third party, then there is no reason why he could not have explained that in his affidavit. It is not sufficient, in this Court's view, for the Lewisons to make vague allegations that they need to con-

duct discovery regarding a particular issue, without an explanation of why such discovery is needed and from whom.[17] *See Bouchard*, 34 F.3d at 1138 ("A court can reject a request for discovery, even if properly and timely made through a Rule 56(f) affidavit, if it deems the request to be based on speculation as to what potentially could be discovered. Rule 56(f) is not a shield against all summary judgment motions. Litigants seeking relief under the rule must show that the material sought is germane to the defense, and that it is neither cumulative nor speculative, and a bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment under Rule 56(f).") (quotation marks omitted).

Similarly, the Lewisons should not need to conduct discovery regarding Wendy Lewison's role in the transactions, assuming such evidence would be relevant to her capacity for liability (which the Court holds it is not), since Wendy Lewison would obviously be privy to any such evidence, and could have submitted it in response to Fonda's motion.

Rule 56(f) gives the Court discretion to delay ruling on summary judgment to allow the parties further discovery. In this case, the Court finds that none of the topics about which the Lewisons allege that they need to conduct discovery would result in the production of evidence which would successfully support their opposition to Fonda's motion. Thus, their request for such a continuance is denied. Because none of the material factual issues in this case are genuinely in dispute, Fonda is entitled to a judgment as a matter of law.

---

**17.** Moreover, because the Lewisons have submitted no competent evidence that NPP and NPE were de facto corporations, their contention that the Neptune entities should be treated as corporations by estoppel cannot be sustained as a matter of New York law; therefore, it would be a waste of resources of all concerned to delay this case under the rubric of allowing discovery on any of the topics related to that issue.

## III. Conclusion

Wherefore, the Lewisons' motion for summary judgment (Paper 97) is **DENIED** and Fonda's motion for summary judgment (Paper 90) is **GRANTED.** The Court will schedule a prompt hearing to determine the amount of damages and attorneys fees.

Judgment is entered in favor of Fonda (and against the Lewisons, jointly and severally) in the amount of $180,345.42, plus interest accruing at a rate of twelve percent per annum from March 1, 1999, to the date of payment. The Court further awards Fonda reasonable costs, including attorneys' fees, incurred in collecting this judgment, to be determined after a hearing. However, the Court will not grant Fonda's request to declare that Fonda may enter any premises at which the collateral covered by the security agreement may be found and take immediate possession thereof.